

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Silvia Font de Bardón, su esposo José Bardón y la sociedad de Gananciales Constituida por ambos y otros<br><br>　　　Peticionarios<br><br>　　　　　v.<br><br>Mini-Warehouse Corporation, et al<br><br>　　　Recurridos | Certiorari<br><br>2010 TSPR 96<br><br>179 DPR ____ |

Número del Caso: CC-2009-336

Fecha: 17 de junio de 2010

Tribunal de Apelaciones:

　　　　Región Judicial de Carolina Panel V

Jueza Ponente:

　　　　Panel integrado por su presidente, el Juez Arbona Lago, la Jueza Cotto Vives y el Juez Salas Soler.

Abogados del a Parte Peticionaria:

　　　　　　　　Lcdo. Álvaro R. Calderon
　　　　　　　　Lcda. María de Lourdes Calderón


Abogados de la Parte Recurrida:

　　　　　　　　Lcdo. Benjamín Acosta, JR.
　　　　　　　　Lcda. Yazner Y. Ortiz Navedo


Abogado de los Codemandados Recurridos:

　　　　　　　　Lcdo. Héctor Cuebas Tañón
　　　　　　　　Lcdo. Nelson Córdova Morales
　　　　　　　　Lcdo. Roberto L. Varela Ríos


Materia:　Daños y Perjuicios; Violación de Contratos


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Silvia Font de Bardón, su
esposo José Bardón y la
sociedad de gananciales                          *Certiorari*
constituida por ambos; y otros

        Peticionarios
                                            CC-2009-0336
        v.

Mini-Warehouse Corporation; *et
al*

        Recurridos


Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.


En San Juan, Puerto Rico, a 17 de junio de 2010.

Comparecen ante nos Silvia Font de Bardón, *et als.*, en adelante, los peticionarios, y nos solicitan la revisión de una determinación emitida por el Tribunal de Apelaciones. Mediante dicho dictamen, el tribunal *a quo* revocó una Orden del Tribunal de Primera Instancia que había denegado una reconvención instada por la codemandada Real Legacy Assurance Company, Inc., en adelante, Real Legacy, contra los peticionarios. A su vez, el Tribunal de Apelaciones modificó la determinación del Tribunal de Primera Instancia que declaró Con Lugar escrito intitulado "Moción *'In Limine'* para Excluir Testigos Consultores" presentado por los peticionarios. En consecuencia, el foro apelativo

intermedio prohibió que Real Legacy utilizara ciertos peritos consultores, no así Unlimited Storage Corporation h/n/c/ Mini Warehouse, Commercial Centers Management, Inc., en adelante, Mini Warehouse.

El recurso presentado por los peticionarios nos brinda, *inter alia*, la oportunidad de resolver si un perito que haya sido consultado en preparación al caso y que esté parcializado a favor de la posición de la parte que solicita sus servicios, está impedido de prestar testimonio posteriormente en el juicio. *A priori*, contestamos en la negativa.

Veamos los hechos que dieron génesis a la controversia de autos.

I.

Mini Warehouse es dueña de unas facilidades localizadas en el Centro Industrial "La Cerámica" en el Municipio de Carolina. El local estaba compuesto de sobre mil (1,000) cubículos de diversos tamaños que eran arrendados a distintas empresas y personas para el almacenamiento de bienes muebles.

Durante las horas de la mañana del 6 de julio de 2000, ocurrió un incendió en las facilidades de Mini Warehouse el cual consumió o damnificó parte de las propiedades que se encontraban almacenadas en los cubículos arrendados.

El 29 de septiembre de 2000, la parte peticionaria Silvia Font de Bardón, su esposo José Bardón y la Sociedad

de Bienes Gananciales compuesta por ambos, entre otros demandantes, y arrendatarios de Mini Warehouse para la fecha del incendio, instaron Demanda contra Mini Warehouse, varias compañías aseguradoras, entre ellas, Real Legacy, y otras entidades reclamando el resarcimiento de los daños que alegadamente les había ocasionado el siniestro.[1]

Luego de varios incidentes procesales, el 14 de octubre de 2008, Real Legacy presentó ante el Tribunal de Primera Instancia una Reconvención y Demanda contra Tercero Enmendada. En el escrito alegó que algunos de los peticionarios habían incurrido en culpa o negligencia y/o habían violado las cláusulas establecidas en el Contrato de Arrendamiento por alegadamente mantener combustible líquido inflamable y otros materiales peligrosos en las propiedades arrendadas. A tales efectos, peticionaron al Tribunal de Primera Instancia que ordenara a dichos inquilinos a: i) resarcirle a Real Legacy la suma de cuatro millones cuatrocientos veinticinco mil dólares ($4,425,000.00) pagada por ésta a Mini Warehouse por las alegadas pérdidas en virtud de la Póliza Núm. CPP903E; ii) responderle directamente a los demás peticionarios por sus alegadas pérdidas o, en la alternativa, indemnizarle a Real Legacy cualquier suma de dinero que ésta pudiera

---

[1] Posteriormente, otras partes presentaron sus respectivas reclamaciones judiciales y algunas de ellas se consolidaron con el caso de autos.

venir obligada a pagarle a los demás peticionarios en los casos consolidados de epígrafe, si alguna.

El 21 de octubre de 2008, la parte peticionaria presentó escrito intitulado "Moción Solicitando la Desestimación de la Reconvención". Alegó que la reconvención presentada por Real Legacy era una compulsoria que debía formularse en una alegación responsiva y que la misma no procedía por haberse instado ocho (8) años después de ocurridos los hechos.

*A contrario sensu,* Real Legacy apuntó que la oportunidad y la necesidad de presentar la reconvención había surgido cuando la parte peticionaria anunció el 2 de abril de 2008 que su perito, a saber, el Inspector Miguel A. Cartagena Negrón, testificaría en el tribunal solamente con relación al contenido de su Informe sobre la investigación del incendio. Real Legacy señaló que el aludido Informe precisaba que el fuego se había originado en el cubículo del codemandante, Antonio Yordán Ortiz, y que el siniestro se había propagado por la contribución de otros materiales combustible presentes en los cubículos de otros peticionarios.

Así las cosas, el 21 de octubre de 2008, los peticionarios presentaron una "Moción *In Limine* para Excluir Testigos Consultores". En el escrito plantearon que dos (2) de los peritos consultores de Real Legacy, a saber, Jessica L. Darraby y Jerónimo Pérez Roca, estuvieron presentes en todas las deposiciones

relacionadas con la reclamación del pintor Julio Rosado del Valle, otro de los peticionarios del pleito de autos. Alegaron que dichos peritos participaron activamente durante el transcurso de las deposiciones asesorando constantemente a los abogados de la parte recurrida sobre la estrategia legal a seguir.

En su petitorio, argumentaron que existía una diferencia entre un perito que es contratado por una parte para testificar y un perito consultor que no va a ser testigo en el caso. Fue su contención que los peritos consultores eran parte del equipo de trabajo del abogado que solicitaba sus servicios, por lo que la información que estos brindaran era producto del trabajo del letrado. Por lo tanto, conforme planteado por los peticionarios, éstos debían ser excluidos toda vez que no podían prestar testimonio como peritos imparciales en el caso.

El 3 de noviembre de 2008, Real Legacy presentó una moción de oposición a que se excluyera el testimonio de sus peritos. Apuntó que la distinción entre un perito consultor y un perito testigo surgía solamente en el contexto de descubrimiento de prueba. Además, fue su contención que por lo general los peritos eran consultados por los abogados de la parte que los contrataba y que por ello no perdían su imparcialidad.

Luego de varios escritos presentados por todas las partes, el 17 de noviembre de 2008, el Tribunal de Primera Instancia emitió una Orden en la que denegó la

reconvención por ser compulsoria y por haberse presentado tardíamente. A su vez, declaró Con Lugar la solicitud para excluir a los peritos consultores utilizados por Real Legacy, en particular a Jessica L. Darraby y Jerónimo Pérez Roca.[2]

Inconforme con dicho dictamen, el 30 de diciembre de 2008, Real Legacy presentó una petición de *certiorari* ante el Tribunal de Apelaciones.  En dicha petición, impugnó la decisión del Tribunal de Primera Instancia de no permitir la reconvención y de ordenar la exclusión del testimonio de sus peritos.

El 27 de febrero de 2009, el foro apelativo intermedio expidió el auto de *certiorari* solicitado. Sobre el primer extremo, el Tribunal de Apelaciones revocó la decisión del Tribunal de Primera Instancia, por lo que permitió la presentación de la reconvención.  Descansó su decisión en que los peticionarios no habían logrado probar que la reconvención era improcedente, o que la misma retrasaría los procedimientos; máxime cuando al momento en que el Tribunal de Primera Instancia resolvió no permitir la reconvención aun no se había celebrado la Conferencia con Antelación al Juicio.

En cuanto al segundo extremo, a saber, la exclusión de los peritos consultores, el distinguido Tribunal de Apelaciones sostuvo al foro de instancia por entender que

---

[2] Además de Jessica L. Darraby y Jerónimo Pérez Roca, Real Legacy anunció otros peritos que testificarían. En cuanto a estos peritos, el Tribunal de Primera Instancia entendió que no habían actuado como consultores y que podían ser utilizados por la recurrida.

no hubo abuso de discreción al emitir su dictamen. Sin embargo, apuntó que la restricción sobre el uso de los peritos solo aplicaba a Real Legacy y no era extensiva a Mini Warehouse.

Insatisfechos, el 24 de marzo de 2009, los peticionarios presentaron una Moción de Reconsideración ante el Tribunal de Apelaciones. El foro apelativo denegó el petitorio.

Inconformes, y luego de varios trámites ante este Foro, el 30 de abril de 2009, los peticionarios presentaron el recurso de autos planteando como errores:

1. Erró el Tribunal de Apelaciones al revocar al Tribunal de Primera Instancia y permitir la reconvención y demanda contra tercero radicada por Real Legacy contra Antonio Yordán y todos los demandantes.

2. Erró el Tribunal de Apelaciones al no extender la prohibición de los peritos consultores a Mini Warehouse y limitarla a Real Legacy.

Examinado el recurso, acordamos expedir. Contando con el beneficio de la comparecencia de Real Legacy y Mini Warehouse, procedemos a resolver.

## II.

En su primer error, los peticionarios nos plantean que incidió el Tribunal de Apelaciones al permitir la reconvención y demanda contra tercero instada por Real Legacy contra Antonio Yordán y todos los peticionarios. *A priori*, debemos determinar si procede o no la reconvención presentada por Real Legacy.

Una parte puede presentar una reclamación contra una parte adversa a través del mecanismo de la reconvención. Regla 11 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Conforme el ordenamiento procesal vigente, existen dos (2) tipos de reconvenciones: las permisibles y las compulsorias.

Las reconvenciones permisibles son aquellas reclamaciones que no surgen del mismo acto, omisión o evento que motivó la reclamación de la parte contra la que se presenta. Regla 11.2 de Procedimiento Civil, *supra*. Por otro lado, la reconvención compulsoria es aquella reclamación, hecha por una parte contra cualquier parte adversa, que surja del mismo acto, omisión o evento que motivó la reclamación original y cuya adjudicación no requiera la presencia de terceros sobre quienes el tribunal no pueda adquirir jurisdicción. Regla 11.1 de Procedimiento Civil, *supra*.

En el caso particular de las reconvenciones compulsorias, éstas tienen que presentarse al momento de que la parte notifique su alegación. *Íd*. Si no se formulan a tiempo, "se renuncia la causa de acción que la motiva, y quedarán totalmente adjudicados los hechos y reclamaciones sin que el demandado pueda presentar posteriormente una reclamación que haya surgido de los mismos eventos". *Neca Mortg. Corp. v. A & W Dev. S.E.*, 137 D.P.R. 860, 867 (1995). En este caso, aplicará por analogía, el principio de cosa juzgada, siendo concluyente

con relación a aquellos asuntos que pudieron haber sido planteados y no lo fueron. *Íd.*; *Sastre* v. *Cabrera*, 75 D.P.R. 1, 3 (1953). El propósito de esta regla es evitar la multiplicidad de litigios al crear un mecanismo en el que se diluciden todas las controversias comunes en una sola acción. *Neca Mortg. Corp. v. A & W Dev. S.E.*, *supra*, pág. 867.

Aunque las Reglas de Procedimiento Civil, *supra*, disponen que una reconvención compulsoria se debe formular en el momento de que la parte notifique su alegación, existen algunas excepciones que relevan a la parte demandada de presentarla en su contestación a la demanda.

En primer término, se puede presentar una reconvención compulsoria a través de una alegación suplementaria. Regla 11.5 de Procedimiento Civil de Puerto Rico, *supra*. Este mecanismo se utiliza cuando es con relación a una reclamación cuya exigibilidad advenga luego de que dicha parte haya notificado su contestación a la demanda. *Íd.* El objetivo de esta regla es poner al día el litigio añadiendo alegaciones respecto a hechos que hayan surgido con posterioridad a la alegación que se pretende suplementar. *Neca Mortg. Corp. v. A & W Dev. S.E.*, *supra*, pág. 867.

Otra de las instancias en las que una parte puede presentar una reconvención compulsoria es a través de una solicitud de enmienda a su alegación. Regla 11.6 de Procedimiento Civil, *supra*. Se reconoce esta excepción en

aquellos casos en que una parte deje de formular una reconvención en su contestación a la demanda por descuido, inadvertencia o negligencia excusable, o cuando así lo requiera la justicia. *Íd.*

Al momento de que los tribunales vayan a determinar si conceden o no las enmiendas a las alegaciones, deben ejercer su facultad liberalmente. Regla 13.1 de Procedimiento Civil, *supra*; *Cruz Cora v. UCB/Trans Union P.R. Div.*, 137 D.P.R. 917, 922 (1995). Debemos recordar que en nuestra jurisdicción existe una clara política judicial a favor de que los casos se ventilen en sus méritos. *S.L.G. Sierra v. Rodríguez*, 163 D.P.R. 738, 745 (2005); *Valentín v. Mun. de Añasco*, 145 D.P.R. 887, 897 (1997); *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 D.P.R. 115, 224 (1992). Se considera un interés importante el que los litigantes tengan su día en corte y el que las partes no se vean perjudicadas por los actos u omisiones de su abogado. *S.L.G. Sierra v. Rodríguez*, *supra*, pág. 745; *Rivera et al. v. Superior Pkg., Inc. et al.*, *supra*, pág. 224.

El poder de los tribunales para permitir enmiendas a las alegaciones es amplio, y tiene que demostrarse un claro abuso de discreción o un perjuicio manifiesto a la parte contraria para que se revoque la actuación del juez. *Neca Mortg. Corp. v. A & W Dev. S.E.*, *supra*, pág. 868; *Torres et al. v. Ramos*, 28 D.P.R. 586, 588 (1930).

A pesar de que los Tribunales pueden conceder las enmiendas de forma liberal, dicha liberalidad no es infinita. *Epifanio Vidal, Inc. v. Suro*, 103 D.P.R. 793, 796 (1976). Al momento de permitir una enmienda a las alegaciones se deben ponderar los siguientes factores: (i) el impacto del tiempo transcurrido previo a la enmienda, (ii) la razón de la demora, (iii) el perjuicio a la otra parte, y (iv) la procedencia de la enmienda solicitada. *S.L.G. Sierra v. Rodríguez*, *supra*, pág. 748.

Cada uno de estos factores debe ser examinado en conjunto ya que ninguno de ellos opera aisladamente. *Íd.* Es por ello que se ha resuelto que el paso del tiempo no impide, *ipso facto*, que el Tribunal admita una enmienda. *Íd.* Los tribunales deben conceder el permiso para enmendar la demanda liberalmente, aun en etapas avanzadas de los procedimientos. *Íd.*, págs. 748-49; *Ortiz Díaz v. R. & R. Motors Sales Corp.*, 131 D.P.R. 829, 836 (1992); *Granados v. Rodriguez Estrada I*, 124 D.P.R. 1, 43 (1989). De hecho, se pueden realizar enmiendas en etapas tan avanzadas como la Conferencia con Antelación al Juicio. *S.L.G. Sierra v. Rodríguez*, *supra*, pág. 749. Ello se debe a que "la conferencia preliminar al juicio, cuyo propósito es simplificar los procedimientos, ofrece la oportunidad para que se sometan al tribunal posibles enmiendas a las alegaciones antes de la vista en su fondo". *Íd.*, pág. 749; *Ortiz Díaz v. R & R Motors Sales Corp.*, *supra*, pág. 837.

El factor que resulta de mayor relevancia al momento de evaluar una solicitud de autorización para enmendar las alegaciones es el perjuicio que puede causarse a la parte contraria. *S.L.G. Sierra v. Rodríguez*, *supra*, págs. 749-50. Si el permitir que una parte enmiende sus alegaciones engendra un perjuicio indebido a la parte afectada o si la petición se intenta enmendar en un momento irrazonable, usualmente se prohíbe la enmienda. *Íd.*; *Torres Cruz v. Municipio de San Juan*, 103 D.P.R. 217, 220 (1975).

Por otro lado, si no se ha causado perjuicio a la otra parte, el que se solicite la enmienda tardíamente no es suficiente de por sí para denegar la autorización para enmendar. *S.L.G. Sierra v. Rodríguez*, *supra*, pág. 749; *Torres Cruz v. Municipio de San Juan*, *supra*, pág. 220 n. 1.

También se ha dispuesto que si la enmienda altera radicalmente el alcance y naturaleza del caso, convirtiendo la controversia inicial en tangencial, el permiso para concederla debe ser denegado. *S.L.G. Sierra v. Rodríguez*, *supra*, pág. 749. Empero, "[e]l cambio de teoría por sí solo no es suficiente para denegar el permiso a menos que éste cause perjuicio al demandado". *Íd.*, citando a J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T. I, pág. 317.

Analizadas las normas con relación a las reconvenciones, procedemos a aplicarlas a los hechos particulares de este caso.

Comencemos apuntando que la reconvención instada por Real Legacy es una compulsoria ya que surge del mismo evento que motivó la reclamación original; el incendio ocurrido en las facilidades de Mini Warehouse. No obstante, dicha reconvención no tenía que necesariamente estar contenida dentro de la alegación responsiva de Real Legacy. La justicia nos aconseja que, tal y como ocurrió en este caso, la reconvención se podía traer mediante una enmienda a las alegaciones.

Conforme surge de la Minuta de la Conferencia sobre el Estado Procesal del caso celebrada el 10 de octubre de 2008, el Tribunal de Primera Instancia hizo constar varios aspectos del descubrimiento de prueba que estaban pendientes. Además, señaló que el 31 de marzo de 2009 se celebraría otra Conferencia sobre el Estado Procesal del caso y que el 3 de junio de 2009 se llevaría a cabo la Conferencia con Antelación al Juicio. Por otra parte, del expediente ante nuestra consideración surge que el 9 de febrero de 2009 se depuso al Inspector Miguel A. Cartagena.

Por lo tanto, aunque la enmienda se presentó varios años después de ocurridos los hechos y de presentada la Demanda original, para el momento en que el Tribunal de Primera Instancia determinó no permitir la reconvención

aun no había culminado el descubrimiento de prueba ni se había llevado a cabo la Conferencia con Antelación al Juicio. Inclusive, y de medular importancia, los peticionarios presentaron el 4 de mayo de 2009 una Cuarta Demanda Enmendada trayendo un nuevo demandado, siendo autorizada por el Tribunal de Primera Instancia.[3]

Por otro lado, la reconvención tampoco presenta un cambio radical en la naturaleza del caso que ocasione un perjuicio a la parte peticionaria. La enmienda está relacionada con el incendio ocurrido en las facilidades de Mini Warehouse el cual da lugar a la reclamación original. Además, los fundamentos de la reconvención surgen del Informe que rindiera uno de los peritos de los peticionarios y sobre el cual versará su testimonio en el tribunal. Por lo tanto, estamos convencidos de que los peticionarios podrán prepararse adecuadamente para la reclamación que ahora se presenta en su contra.

En conclusión, no incidió el Tribunal de Apelaciones en su determinación de permitir que Real Legacy presentara la reconvención solicitada.

III.

Nos corresponde ahora resolver si la decisión del Tribunal de Apelaciones con relación a la exclusión de los

---

[3] Debemos destacar que el nuevo demandado no había sido traído al pleito hasta ese momento y que, por ende, no ha participado en ninguna de las etapas del proceso. Al traerse este nuevo demandado al caso ello conlleva el que se presenten nuevas alegaciones, se lleve a cabo un nuevo descubrimiento de prueba, entre otras.

peritos consultores debe extenderse a Mini Warehouse como es la contención de los peticionarios.

Los peticionarios plantean que, aunque los peritos excluidos fueron contratados por Real Legacy, sirvieron de consultores a todos los abogados de la parte recurrida, incluyendo a Mini Warehouse. Durante el transcurso de las deposiciones, los peritos consultores se reunieron en privado con los abogados de todos los recurridos, asesorándolos "por medio de señalamientos que le hicieran al oído durante las deposiciones" y mediante notas escritas. Argumentan que al ayudar y aconsejar a la representación legal, estos peritos son considerados parte del producto del trabajo de los abogados de los recurridos lo cual los incapacita para fungir como testigos imparciales en el caso, por lo que no deben ser permitidos como peritos ni de Real Legacy, ni de ninguno de los otros recurridos.

*A priori*, debemos destacar que, aunque nuestras Reglas de Procedimiento Civil, *supra*, y Reglas de Evidencia, *In re Aprobación Reglas de Evidencia*, 2009 T.S.P.R. 35, 175 D.P.R.___ (2009), contienen disposiciones relacionadas a los peritos, la figura del perito consultor no ha sido objeto de amplia discusión en nuestra jurisdicción. Por tal razón, además de considerar las normas aplicables en Puerto Rico, acudimos de manera ilustrativa a los estatutos y a las doctrinas elaboradas en la jurisdicción norteamericana sobre el perito

consultor con el propósito de lograr la más cabal solución de la controversia ante nuestra consideración.

A.

En primer término, analicemos si bajo la doctrina del producto del trabajo (*work product)* del abogado un perito que una parte haya consultado en preparación al caso está impedido de prestar testimonio posteriormente en el juicio.

Un perito es una persona que, a través de la educación o experiencia, ha desarrollado un conocimiento o destreza sobre una materia de manera que puede formar una opinión que sirva de ayuda al juzgador. *Black´s Law Dictionary*, 8th ed., Minn., Thomson West, 2004, pág. 619. (Traducción nuestra.) El perito es "la persona entendida, el individuo competente, idóneo, por tener unas determinadas aptitudes y conocimientos, por poseer una adecuada capacidad". *San Lorenzo Trad., Inc. v. Hernández*, 114 D.P.R. 704, 709 (1983).

Cuando un perito es consultado por una parte, pero no se espera que sea llamado a testificar en el juicio, se le conoce como perito consultor. *Black´s Law Dictionary*, *op. cit.*, pág. 619. Si, por el contrario, el perito ha sido identificado como un testigo potencial, entonces se le conoce como un perito testigo. *Íd.*

Por lo general, los peritos consultores y los peritos testigos reciben un trato distinto durante el descubrimiento de prueba. Tanto las Reglas de

Procedimiento Civil de Puerto Rico, *supra*, como las Reglas de Procedimiento Civil Federal, 28 U.S.C.A. R. 1 *et seq.*, reconocen que una parte puede requerirle a otra que provea cierta información sobre sus peritos testigos que no tiene que proveer con relación a los peritos consultores.

Bajo nuestra jurisdicción, se le puede exigir a la otra parte que exprese la materia sobre la cual va a declarar el perito testigo, y que entregue un resumen de sus opiniones y una breve expresión de las teorías, hechos o argumentos que sostienen las mismas. Regla 23.1 de Procedimiento Civil, *supra*. En cambio, bajo el estatuto federal, se requiere que se acompañe un informe que contenga: (i) una declaración de todas las opiniones sobre las que versará el testimonio pericial y los fundamentos de cada una de ellas; (ii) los datos o cualquier otra información que haya utilizado el perito en la formación de sus opiniones; (iii) cualquier evidencia que vaya a ser utilizada para sustentar las mismas; (iv) las cualificaciones del perito, incluyendo una lista de todos los trabajos que haya publicado en los últimos diez (10) años; (v) una lista de todos los casos en los que haya testificado como perito en los últimos cuatro (4) años, ya sea durante una deposición o un juicio; y (vi) una declaración de la compensación que se le debe pagar por su estudio sobre el caso y por su testimonio en el tribunal. Regla 26(a)(2) de Procedimiento Civil Federal, 28 U.S.C.A. R. 26.

Por otro lado, en cuanto a los peritos consultores, las Reglas de Procedimiento Civil Federal, *supra*, establecen, como norma general, que una parte no puede utilizar los mecanismos de descubrimiento de prueba para lograr que se revelen hechos conocidos u opiniones de un perito que ha sido contratado por otra parte con anterioridad al pleito o en preparación al juicio y el cual no va a ser llamado a testificar. Regla 26(b)(4) de Procedimiento Civil Federal, *supra*. Solamente se permite hacer uso de estos recursos en aquellos casos en que se demuestre que hay circunstancias excepcionales que hagan impráctico, para la parte que solicite que se revele la información, el obtener por otros medios hechos u opiniones sobre la misma materia. *Íd.*[4]

Como se puede apreciar, durante el descubrimiento de prueba, los peritos consultores gozan de cierta protección que no ostentan los peritos que van a testificar. Esa distinción se debe a que esos peritos que las partes consultan y que no van a ser sentados a testificar son considerados personas protegidas por la doctrina del producto del trabajo (*work product*) del abogado. *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1219 (4to Cir. 1976).

---

[4] Debemos destacar que, aunque se explican las disposiciones contenidas en la Regla 26(a)(2) de Procedimiento Civil Federal, 28 U.S.C.A. R. 26, la nueva Regla 23.1 de Procedimiento Civil de 2009, *In re Aprobación Rs. Proc. Civil*, 2009 T.S.P.R. 143, 176 D.P.R. ___ (2009), vigente el 1 de julio de 2010, también contempla las normas discutidas en este acápite.

La doctrina del producto del trabajo (*work product*) del abogado establece que las impresiones mentales, conclusiones, opiniones o teorías legales del caso de los abogados están exentas de ser reveladas hacia la otra parte. *Ades v. Zalman*, 115 D.P.R. 514, 525 (1984). En el caso de los consultores, los consejos que hayan ofrecido basados en información revelada durante las comunicaciones privadas entre éste y un cliente o su abogado pueden ser consideradas como "opiniones" cobijadas por dicha protección. *In re Cendant Corp. Secs. Litigation*, 343 F.3d 658, 665 (3er Cir. 2003).

Existen varias consideraciones de política pública que sostienen la norma que protege las opiniones de los peritos que no van a testificar: (i) alentar a los abogados a que obtengan el conocimiento especializado que sea necesario sin el temor de que su adversario pueda obtener dicha información; (ii) evitar la injusticia que pueda surgir al permitir que una parte se beneficie del esfuerzo y los gastos de la otra parte; (iii) impedir que los peritos se cohíban de fungir como consultores por miedo a que su testimonio pueda ser compelido; y (iv) evitar el perjuicio que puede causar a la parte que consultó al perito el que se le permita a su adversario el poder llamar en el juicio al perito que ofreció una opinión desfavorable. *Plymovent Corp. v. Air Technology Solutions, Inc.*, 243 F.R.D. 139, 143 (D. N.J. 2007).

A la luz de la doctrina examinada, se desprende que, por lo general, la información que los peritos consultores le han ofrecido al cliente o al abogado está exenta de ser revelada hacia la otra parte. No obstante, hay que señalar que aunque existe un trato diferente en la etapa del descubrimiento de prueba entre los peritos consultores que no van a testificar y los peritos que van a prestar su testimonio en el tribunal, ni las Reglas de Procedimiento Civil de Puerto Rico, ni las Reglas de Procedimiento Civil Federal prohíben el que una parte pueda renunciar a su derecho a que no sea descubierta la información que le ha provisto un perito consultor. Tampoco prohíben el que un perito consultor pueda testificar en un tribunal.

Es una estrategia común de litigio que los abogados decidan acudir a peritos consultores para evaluar la evidencia disponible y poder llegar a unas conclusiones preliminares manteniendo la protección contra el descubrimiento de prueba. *Oklahoma v. Tyson Foods, Inc.*, 2009 U.S. Dist. LEXIS 72022 at 31 (N.D. Okla. 2009). Si las opiniones preliminares no son favorables para la parte que los consultó, el abogado no va a incluir al consultor en su lista de peritos que van a testificar en el caso. *Íd. A contrario sensu*, si las opiniones son afines con la teoría del abogado sobre el caso, el letrado entonces designará al consultor como un perito testigo. *Íd.*

Si un perito que una parte haya consultado en preparación al litigio luego testifica en el tribunal, el

efecto es que pierde la protección de la doctrina del producto del trabajo (*work product)* del abogado. *Douglas v. University Hospital*, 150 F.R.D. 165, 168 (E.D. Mo. 1993). Por lo tanto, la información que haya ofrecido estaría sujeta a ser revelada mediante los mecanismos del descubrimiento de prueba. *Íd.* No obstante, nada impide que un perito consultor pueda posteriormente prestar testimonio en el tribunal con relación al caso al que fue consultado. La decisión de una parte de sentar o no a testificar a un perito consultor es una estrategia de litigio que le compete tomar únicamente a dicha parte.

A tenor con lo expuesto, determinamos que bajo la doctrina del producto del trabajo (*work product)* del abogado no existe ningún impedimento para que un perito consultor pueda prestar testimonio en un juicio.

### B.

Nos resta por analizar cómo la alegada falta de imparcialidad de un perito consultor afectará el que posteriormente pueda testificar en el tribunal.

Conforme con las Reglas de Evidencia, *supra,* se permite que una persona capacitada como perito pueda testificar, en forma de opiniones o de otra manera, cuando su conocimiento científico, técnico o especializado sea de ayuda a la juzgadora o al juzgador para poder entender la prueba o determinar un hecho en controversia. *Íd.*, Regla 702.

Para que una persona quede cualificada como perito, por un lado, es necesario que posea el conocimiento, destreza, experiencia, adiestramiento o instrucción suficiente para calificarlo como experto o perito en el asunto sobre el cual va a prestar testimonio. *Íd.*, Regla 703(a). Por otro lado, se requiere además que el testimonio sirva de ayuda al juzgador promedio para entender la evidencia o adjudicar un hecho en controversia; de lo contrario, no se debe permitir la prueba pericial. E.L. Chiesa Aponte, *Tratado de Derecho Probatorio*, San Juan, Publicaciones JTS, 2005, T. I, pág. 498.

Al hacer la determinación de admisibilidad del testimonio pericial, el Tribunal debe tomar en cuenta los siguientes factores: (i) el riesgo de causar perjuicio indebido; (ii) el riesgo de causar confusión; (iii) el riesgo de causar desorientación del jurado; (iv) la dilación indebida de los procedimientos; y (v) la innecesaria presentación de prueba acumulativa. *In re Aprobación Reglas de Evidencia*, *supra*, Reglas 702 y 403.

El juez tiene amplia discreción con relación a la admisión o exclusión de prueba pericial, y sus determinaciones deben ser sostenidas a menos que sean claramente erróneas. *Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962). Si concluye que un testigo no tiene las cualidades requeridas para declarar como perito con relación a la materia que se está investigando, puede

excusarlo. *Del Toro v. La Corte Municipal*, 16 D.P.R. 93, 96 (1910). En ese caso, de no demostrarse que el juez abusó de su discreción al excluir a un perito, la resolución que emita a tales efectos no puede ser revocada a causa de error. *United States v. Lennick*, 18 F.3d 814, 821 (9no Cir. Mont. 1994); *Del Toro v. La Corte Municipal*, *supra*, pág. 96. Sin embargo, la discreción del juez no está libre de restricciones. *Hawes v. Chua*, 769 A.2d 797, 801 (D. C. 1997). Su ejercicio debe estar basado en principios legales adecuados. *Íd.*

Una vez el juez determina que un testigo está cualificado como perito o las partes estipulan su cualificación, se puede presentar prueba sobre el valor probatorio del testimonio pericial para impugnar o sostener su credibilidad. *In re Aprobación Reglas de Evidencia*, *supra*, Reglas 109 y 703(c).[5] El valor probatorio del testimonio va a depender de: "(a) si el testimonio está basado en hechos o información suficiente; (b) si el testimonio es el producto de principios y métodos confiables; (c) si la persona testigo aplicó los principios y métodos de manera confiable a los hechos del caso; (d) si el principio subyacente al testimonio ha sido

---

[5] La Regla 109 de Evidencia establece que el tribunal determinará las cuestiones preliminares en torno a la capacidad de una persona para ser testigo. *In re Aprobación Reglas de Evidencia*, 2009 T.S.P.R. 35, 175 D.P.R.___ (2009), Regla 109 de Evidencia. No obstante, ello no limita el que las partes puedan presentar evidencia ante el jurado que sea pertinente al valor probatorio o la credibilidad de la evidencia que se admitió. Por otra parte, la Regla 703 de Evidencia dispone que la estipulación que se haga con relación a la calificación de una persona como perito no excluye el que las partes puedan presentar evidencia sobre el valor probatorio del testimonio pericial. *Íd.*, Regla 703 de Evidencia.

aceptado generalmente en la comunidad científica; (e) las calificaciones o credenciales de la persona testigo; y (f) la parcialidad de la persona testigo". *Íd.*, Regla 702.

Según mencionáramos anteriormente, al momento de que el tribunal determine si un testigo cualifica como perito y, por ende, si es admisible su testimonio pericial, lo que se requiere es que posea un conocimiento científico, técnico o especializado que sea de ayuda a la juzgadora o al juzgador para poder entender la prueba o determinar un hecho en controversia. *Íd.* El que un testigo sea imparcial no es una condición que se exija para calificar a una persona como perito. *United States v. Williams*, 81 F.3d 1434, 1441 (7mo Cir. 1996).

Existe una postura que establece que en determinados casos la parcialidad puede afectar la cualificación de un perito. Se ha argumentado que si se está ante una situación en que no exista independencia del perito respecto a la parte o los abogados de ésta, dicho perito carecerá de la credibilidad necesaria para servir de ayuda al juzgador de los hechos. *Trigon Ins. Co. v. U.S.*, 204 F.R.D. 277, 295 (E.D. Va. 2001). Su testimonio pericial simplemente no podrá ayudar al juzgador a entender la prueba presentada o determinar un hecho en controversia; lo cual es una condición *sine qua non* para la admisibilidad del testimonio pericial. *Íd.* Ello se debe a que cuando un perito se convierte en defensor de la causa, éste se aparta de ser un perito objetivo, y cualquier

testimonio que preste puede inducir a error y ser injustamente perjudicial. *Véanse*, *Conde v. Velsicol Chemical Corp.*, 804 F.Supp. 972, 984 (S.D. Ohio 1992); *Viterbo v. Dow Chemical Co.*, 646 F.Supp. 1420, 1425-1426 (E.D. Tex. 1986); *Johnston v. U.S.*, 597 F.Supp. 374, 411 (D.C. Kan. 1984).

No obstante, las Reglas de Evidencia de Puerto Rico disponen claramente que la parcialidad es un elemento que se tomará en consideración al evaluar el valor probatorio del testimonio pericial. *In re Aprobación Reglas de Evidencia*, *supra*, Reglas 702. Es un factor que va dirigido al peso del testimonio y no a su admisibilidad o a las cualificaciones de la persona como perito. *Veánse*, *United States v. Abonce-Barrera*, 257 F.3d 959, 965 (9no. Cir. 2001); *DiCarlo v. Keller Ladders, Inc.*, 211 F.3d 465, 468 (8vo Cir. 2000); *U.S. v. Kelley*, 6 F.Supp.2d 1168, 1183 (D. Kan. 1998); *United States v. Williams*, *supra*, pág. 1441. Se trata de una circunstancia que afecta la credibilidad del testigo la cual será evaluada en su momento por el juzgador de los hechos. *DiCarlo v. Keller Ladders, Inc.*, *supra*, pág. 468; *United States v. Abonce-Barrera*, *supra*, pág. 965.

Reconocemos que la parcialidad del testimonio pericial puede representar un serio obstáculo para la búsqueda de la verdad y para la consecución del propósito de dicha prueba, que es servir de ayuda al juzgador. Chiesa Aponte, *op. cit.*, Tomo 1, pág. 526. Sin embargo, el

sentido común, el contrainterrogatorio,[6] los argumentos de los abogados de la parte contraria, el testimonio que ofrezcan los peritos de la demás partes y, de ser necesaria, una instrucción adecuada del tribunal, normalmente permiten que el juzgador de los hechos evalúe adecuadamente el testimonio de un perito. *Conde v. Velsicol Chemical Corp.*, *supra*, pág. 986.

Además, es una norma reiterada en nuestra jurisdicción que el juzgador de hechos no está obligado a aceptar las conclusiones de un perito. *Pueblo v. Montes Vega*, 118 D.P.R. 164, 170-71 (1986); *Pueblo v. Marcano Pérez*, 116 D.P.R. 917, 928 (1986); *Velázquez v. Ponce Asphalt*, 113 D.P.R. 39, 48 (1982); *Pueblo v. Dones*, 56 D.P.R. 211, 222 (1940). Por lo tanto, si luego de evaluar el testimonio pericial, el juzgador concluye que no merece credibilidad, tiene la facultad de rechazarlo. *Pueblo v. Dones*, *supra*, pág. 222.

A tenor con lo expuesto, el hecho de que un perito consultor pueda estar parcializado hacia la parte que lo presenta, no lo descalifica, *ipso facto,* para testificar en el juicio. La parcialidad será un elemento a considerar al evaluar el valor probatorio de dicho testimonio. El efecto que tenga sobre el peso de su testimonio el hecho

---

[6] Sobre el contrainterrogatorio a los peritos, la Regla 707 de Evidencia, *supra*, dispone que: "[t]oda persona testigo que declare en calidad de perita podrá ser contrainterrogada siempre sobre sus calificaciones como perita, el asunto objeto de su opinión pericial y los fundamentos de su opinión". *In re Aprobación Reglas de Evidencia*, *supra*. Por lo tanto, el abogado de la parte contraria podrá demostrar la parcialidad del perito durante el contrainterrogatorio. *U.S. v. Kelley*, 6 F.Supp.2d 1168, 1183 (D. Kan. 1998); *Sears v. Rutishauser*, 102 Ill.2d 402 (Ill. 1984).

de que haya sido consultado por una parte en preparación al litigio, es una situación a ser determinada por el juzgador de los hechos. Véase, *ITT Industrial Credit Co. v. Milo Concret Co., Inc.*, 31 N.C.App. 450, 460 (N.C.App. 1976).

En el caso de autos, los peritos Jessica L. Darraby y José Pérez Roca no estaban descalificados para ejercer como peritos testigos por el simple hecho de que hayan sido los consultores de los recurridos. El que Real Legacy o Mini Warehouse hayan consultado a dichos peritos en preparación al caso y posteriormente hayan decidido sentarlos a testificar, es una estrategia de litigio que se realiza frecuentemente la cual no está prohibida en nuestra jurisdicción.

Por otra parte, aunque el Tribunal de Primera Instancia tiene discreción para determinar si una persona posee las cualidades suficientes para permitirle testificar como perito, la parcialidad de Jessica L. Darraby y José Pérez Roca no es un factor que se tome en consideración al determinar dicha cualificación.

Para que ambos peritos puedan testificar en el caso, es necesario que se demuestre que ellos poseen el conocimiento, destreza, experiencia, adiestramiento o instrucción necesarias sobre el asunto del cual van a prestar testimonio y que sus declaraciones sirvan de ayuda al juzgador para entender la prueba o determinar un hecho en controversia con relación a las alegadas pérdidas

sufridas por el pintor Julio Rosado del Valle. Si se determina que Jessica L. Darraby y José Pérez Roca están debidamente cualificados para declarar como peritos, entonces el elemento de parcialidad se puede utilizar para atacar el valor probatorio de sus testimonios.

En este caso, a través del contrainterrogatorio que se les haga a Jessica L. Darraby y José Pérez Roca, los argumentos que presenten los abogados de los peticionarios y los testimonios de los peritos que ofrezca, se puede indagar sobre la posible parcialidad de estos peritos. De esta manera, el juzgador de los hechos podrá percatarse sobre la presencia o no de parcialidad, y decidirá si descarta o no el testimonio pericial que ofrezcan Jessica L. Darraby y José Pérez Roca.[7]

En consecuencia, concluimos que Real Legacy puede utilizar a Jessica L. Darraby y José Pérez Roca como peritos en el juicio. De igual forma, resolvemos que Mini Warehouse también puede hacer uso de ellos aun cuando se alegue que Jessica L. Darraby y José Pérez Roca están parcializados hacia la posición de los recurridos.

---

[7] Destacamos que aun si adoptáramos la postura de que se deba excluir testimonio pericial por falta de independencia del perito hacia la parte o el abogado que los consulta, la misma no sería de aplicación a los hechos de este caso. El hecho de que Jessica L. Darraby y José Pérez Roca hayan participado activamente en varias de deposiciones no los convierte en personas dependientes de alguna de las partes de forma que haya que excluir su testimonio. Los peticionarios no han demostrado que Jessica L. Darraby y José Pérez Roca tengan algún interés particular en el resultado del litigio que los convierta en defensores de la causa de Real Legacy. Aunque es cierto que estos peritos recibirán una compensación por el testimonio que proveerán en el tribunal, sus honorarios deben ser satisfechos independientemente de la parte que prevalezca en el pleito.

IV.

Por los fundamentos expuestos, confirmamos el dictamen del Tribunal de Apelaciones en cuanto a permitir la presentación de la reconvención, y revocamos en cuanto a excluir el testimonio de los peritos Jessica L. Darraby y José Pérez Roca. Devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

Se dictará Sentencia de conformidad.


                                        Mildred G. Pabón Charneco
                                             Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Silvia Font de Bardón, su
esposo José Bardón y la
sociedad de gananciales
constituida por ambos; y otros

      Peticionarios

          v.

Mini-Warehouse Corporation; *et
al*

      Recurridos

CC-2009-0336     *Certiorari*

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

SENTENCIA

En San Juan, Puerto Rico, a 17 de junio de 2010.

Por los fundamentos expuestos, confirmamos el dictamen del Tribunal de Apelaciones en cuanto a permitir la presentación de la reconvención, y revocamos en cuanto a excluir el testimonio de los peritos Jessica L. Darraby y José Pérez Roca. Devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton disiente con opinión escrita a la cual se une la Juez Asociada señora Rodríguez Rodríguez. El Juez Asociado señor Rivera Pérez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Silvia Font de Bardón, su
esposo José Bardón y la
Sociedad de Gananciales
Constituida por ambos y otros

     Peticionarios               CC-2009-336   Certiorari

       v.

Mini-Warehouse Corporation, *et
al*
     Recurridos

Opinión disidente emitida por el Juez Presidente señor HERNÁNDEZ DENTON a la cual se une la Juez Asociada señora RODRÍGUEZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 17 de junio de 2010.

Disentimos de la Opinión del Tribunal por entender que no se debió permitir la reconvención de Real Legacy Assurance Company, Inc. (Real Legacy). Dicha aseguradora no ha aducido razón válida alguna para no haberla presentado a tiempo, a tenor de lo dispuesto en las Reglas de Procedimiento Civil y la jurisprudencia interpretativa de este Foro. Entendemos que la Opinión del Tribunal no refleja que se haya considerado correctamente el asunto, sobre todo en vista de la complejidad de este pleito y del número de años que lleva ante los tribunales.

A nuestro juicio, permitir la reconvención en controversia implicaría un retraso indebido en la

adjudicación final de este caso y, además, un fracaso de la justicia. En efecto, con esta decisión este Tribunal le envía un mensaje a los tribunales de instancia de que no le preocupa la lentitud de los procesos judiciales. En virtud de nuestro rol como Juez Presidente de este Foro no podemos avalar dicho proceder. Por ello, disentimos.

I.

El incendio que dio lugar al caso de epígrafe se suscitó el 6 de julio de 2000 en los almacenes de Mini-Warehouse Corporation en Carolina (Mini-Warehouse). Como parte de la investigación que se inició sobre el suceso, el Sr. Miguel Cartagena Negrón, Inspector-Fire Marshal de la División de Investigación de Incendios de la Policía, visitó el lugar y preparó un informe.[8] Dicho informe indica, entre otras cosas, que

> [e]n las áreas de los edificios afectados por el fuego, donde colapsó, se pudo apreciar que algunos cubículos poseían gran cantidad de material combustible ordinarios (papel, mobiliario, cajas, etc.) También se encontró almacenamiento de tanques de gas de 20 libras en varios cubículos, tanques de gasolina o mezclas para cortadores de grama, latas de "sinner" [sic], pinturas y otros productos que pueden incrementar el poder de combustión, ya que estos son acelerantes y crean un enorme potencial de calor.

El 29 de septiembre de 2000, más de cien inquilinos de Mini-Warehouse presentaron una demanda en contra de dicha compañía y de sus aseguradoras. Específicamente, reclamaron las pérdidas que le causó el incendio. Real Legacy, una de

---

[8] A pesar de que el informe no esta fechado, éste indica que se requirió su presencia "en el lugar del incendio el 7 de julio del año en curso."

las aseguradoras de Mini-Warehouse y co-demandada, contestó la demanda el 19 de diciembre de 2000. No obstante, casi ocho años más tarde presentó una reconvención contra todos los demandantes. Alegó, en apretada síntesis, que el informe del Inspector-Fire Marshal establecía que algunos inquilinos almacenaron en sus cubículos material altamente combustible que agravó y facilitó la propagación del incendio, lo cual constituía un incumplimiento de contrato.

Oportunamente, los demandantes se opusieron y alegaron que se trataba de una reconvención compulsoria que debió ser formulada mediante alegación responsiva. Adujeron que no se trataba de una reconvención mediante alegación suplementaria, pues su exigibilidad no surgió después de Real Legacy haber contestado la demanda, sino del mismo hecho que dio lugar a la reclamación original: el incendio. Real Legacy ripostó que no fue hasta que los demandantes informaron que el Inspector-Fire Marshal testificaría sobre el informe, "cuando se establece oficialmente la materia sobre la cual se propone declarar el Inspector-Fire Marshal [sic] Miguel Cartagena Negrón, **que surge la base factual para la reconvención**". (Énfasis suplido.) Apéndice 3 del Recurso de *Certiorari*, pág. 14.

Por su parte, el Tribunal de Primera Instancia no permitió la reconvención instada por Real Legacy. Sin embargo, el Tribunal de Apelaciones revocó y determinó que los demandantes "no ha[n] podido demostrar que la reconvención no procede. Tampoco ha[n] podido demostrar que la reconvención retrasará los procedimientos, máxime si

consideramos que el tribunal al momento de no permitir la reconvención no ha celebrado la conferencia con antelación al juicio". Silvia Font de Bardón, *et al* v. Mini-Ware-House Corporation, *et al*, KLCE0801846.

Mediante la decisión que emite el Tribunal en el día de hoy se confirma la determinación del Tribunal de Apelaciones y se permite la reconvención de Real Legacy.

II.

Como es sabido, las reconvenciones compulsorias son aquellas que se deben formular mediante alegación responsiva "siempre que surja del acto, omisión o evento que motivó la reclamación de la parte adversa." Regla 11.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Si una reconvención compulsoria no se formula a tiempo, es decir, mediante alegación responsiva, se renuncia la causa de acción y quedarán totalmente adjudicados, con efecto de cosa juzgada, los hechos y las reclamaciones que hayan surgido del mismo evento. Neca Mortg. Corp. v. A&W Dev. S.E., 137 D.P.R. 860, 867 (1995). **Esta es la regla general**.

No obstante, las reglas de Procedimiento Civil contemplan una excepción para aquellas ocasiones en las que una parte deja de formular una reconvención por **descuido, inadvertencia o negligencia excusable, o cuando así lo requiera la justicia**. Regla 11.6 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Dicha regla permite que, a modo de excepción y con el permiso del tribunal, una parte pueda formular la reconvención mediante enmienda. Esta regla aplica tanto a las reconvenciones compulsorias como a las permisibles, pero

según de desprende claramente de su texto, es preciso que exista una situación especial para que el tribunal, ejerciendo su discreción, la permita.

Por otro lado, la Regla 11.5 dispone que una parte, con permiso del tribunal, puede formular una reconvención cuya **exigibilidad advenga después de la parte haber notificado su contestación**. Regla 11.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Es decir, esta regla permite que se presente una reconvención, incluso una compulsoria, si ésta **madura** luego de que se haya sometido la alegación responsiva. J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Pubs. J.T.S., 2001, T. 1, pág. 297. En otras palabras, se podrá presentar una reconvención suplementaria sólo cuando al momento de contestar no se hayan tenido aún todos los elementos de la reclamación, por no haber ésta madurado. Esta regla también requiere que el tribunal ejerza su discreción.

La enmienda que permite la Regla 11.6, *supra*, y la reconvención suplementaria de la Regla 11.5, *supra*, deberán permitirse liberalmente por el tribunal cuando lo requiera la justicia. Así se dispone explícitamente en el propio texto de la regla que regula las enmiendas a las alegaciones. La Regla 13.1 de Procedimiento Civil. 32 L.P.R.A. Ap. III. Además, hemos indicado que un tribunal debe evaluar cuatro factores a la hora de ejercer su discreción en estos casos: (1) el impacto del tiempo transcurrido previo a la enmienda; (2) la razón de la demora; (3) el perjuicio causado a la otra parte; y (4) la procedencia de la enmienda solicitada. S.L.G. Sierra v. Rodríguez, 163 D.P.R. 738, 748 (2005) citando a Epifanio

Vidal, Inc. v. Suro, 103 D.P.R. 793, 796 (1975). En dicho caso enfatizamos que es necesario prestar especial atención al perjuicio causado a la otra parte. A estos efectos, expresamos que "[c]iertamente, éste debe ser el factor determinante, puesto que carece de importancia el tiempo que haya pasado desde la presentación original de la demanda o la naturaleza de la enmienda, si ésta resulta inocua a la justicia o a la parte contraria". S.L.G. Sierra v. Rodríguez, *supra*, pág. 750.

Es preciso, pues, que cuando se trate de una reconvención que debió formularse en una alegación respondiente la parte que la presente demuestre que su omisión se debió al descuido, la inadvertencia, a la negligencia excusable o que así lo requiere la justicia. Es esa parte, la que solicita el beneficio de la excepción, quien deberá demostrar por qué no la formuló mediante alegación respondiente, según lo requiere la regla general. Por supuesto, si la parte alega a satisfacción del tribunal que se trata de una alegación suplementaria, porque su reconvención no estuvo madura hasta ese momento, no tendrá que demostrar que fue por descuido, inadvertencia o negligencia excusable, pues el momento en que advendría madura su reclamación estaba fuera de su control. Al evaluar si se debe permitir la reconvención omitida o la suplementaria el tribunal deberá considerar los cuatro factores enunciados en S.L.G. Sierra v. Rodríguez, *supra*.

III.

La controversia en el caso de autos versa, sin duda, sobre una reconvención compulsoria. Real Legacy alega que,

según surge del informe del Inspector-Fire Marshal, los demandantes almacenaban combustibles peligrosos en sus cubículos, por lo que responden por los daños causados por el fuego. La Opinión del Tribunal, sin embargo, no analiza si estamos ante una reconvención compulsoria omitida o una reconvención por alegación suplementaria. Entendemos que ello es vital para determinar si procedía o no permitir la reconvención.

Como indicamos anteriormente, Real Legacy sostiene que no fue hasta el 2 de abril de 2008, cuando los demandantes indicaron que el Inspector-Fire Marshal testificaría sobre el informe, que surge la base factual para la reconvención. Es decir, Real Legacy pretende establecer que la exigibilidad de la causa de acción que supuestamente posee contra los demandantes surgió cuando éstos anunciaron que el Inspector-Fire Marshal testificaría sobre su informe oficial y que no rendiría otro informe. De ésta forma, la aseguradora busca establecer que su reclamación debe permitirse mediante reconvención por alegación suplementaria. No le asiste la razón.

La exigibilidad de una reclamación, incluyendo una hecha mediante reconvención, corresponde al momento en que surge una causa de acción. Es posible que una parte advenga en conocimiento de la existencia de una causa de acción como consecuencia del descubrimiento de prueba. Así, por ejemplo, sería posible que Real Legacy hubiese desconocido que ~~tenía~~ pudiera tener una reclamación en contra de los demandantes hasta que algún perito rindiera su informe. **Sin embargo, ello**

**sería independiente de la forma en la que el perito de la parte contraria vaya a testificar y sólo dependería del momento en que se obtuvo o pudo razonablemente obtenerse la información que evidenciaba la existencia de una posible reclamación. El factor determinante es si Real Legacy sabía o debió saber de los elementos de su causa de acción contra los demandantes y no si el perito de los demandantes testificaría sobre su informe o si rendiría uno nuevo.**

De un examen cuidadoso de los autos originales de este caso surge claramente que en ninguno de sus escritos se encuentra aseveración alguna de Real Legacy en la que tan siquiera insinúe que desconocía el contenido del informe del Inspector-Fire Marshall y que por eso no reconvino antes. De hecho, nunca ha indicado el momento en que tuvo conocimiento del contenido del informe a pesar de que es muy probable que, al ser éste el informe oficial de las autoridades estatales, haya tenido acceso a él muchos años antes de presentar su reconvención.

En consecuencia, es forzoso concluir que no estamos ante una reconvención que maduró después de que se contestó la demanda, como alega Real Legacy. Realmente se trata de una reconvención compulsoria que no se formuló a tiempo. Como indicamos anteriormente, las Reglas de Procedimiento Civil, *supra*, permiten -en limitadas circunstancias- que se admita una reconvención omitida. Según el texto mismo de la Regla 11.6, *supra*, es necesario que se haya dejado de formular la reconvención por descuido, inadvertencia o negligencia excusable. Aún cuando ello se demuestre, será necesario

evaluar los cuatro factores enunciados en S.L.G. Sierra v. Rodríguez, *supra*, para determinar si procede permitir la presentación de la reconvención.

Como ya expresamos, en ningún momento Real Legacy ha alegado que desconociera el contenido del informe del Inspector-Fire Marshal o que por descuido, inadvertencia o negligencia excusable no haya podido presentar la reconvención anteriormente. A nuestro entender, ello es suficiente para denegar de plano la solicitud para presentarla, pues ésta es de naturaleza compulsoria y no se formuló con la alegación responsiva. Sin embargo, aún cuando no procedería tan siquiera entrar a considerarlos, la aplicación de los cuatro factores enumerados en S.L.G. Sierra v. Rodríguez, *supra*, nos conduce al mismo resultado que impide permitir la reconvención. No obstante, la Opinión del Tribunal no tan sólo los considera, sino que los aplica erróneamente y permite una reconvención claramente tardía.

En cuanto al primer factor, el impacto del tiempo transcurrido antes de la enmienda, el Tribunal concluye que, aunque la enmienda se presentó "varios años después de ocurridos los hechos, como no ha concluido el descubrimiento de prueba y no se ha celebrado la conferencia con antelación al juicio, se debe permitir la reconvención". No estamos de acuerdo.

A la hora de analizar el primer factor es preciso tener presente la magnitud de este pleito en relación con el tiempo que ha transcurrido desde que inició. Este análisis implica mucho más que determinar si se ha celebrado la conferencia

con antelación al juicio, aunque dicho dato siempre es relevante. Este pleito involucra a más de cien demandantes y múltiples demandados, incluyendo a Real Legacy, y actualmente lleva casi diez años litigándose, gran parte de ellos en etapa de descubrimiento de prueba. Al momento en que se presentó la reconvención, habían pasado casi **ocho años** desde que Real Legacy contestó la demanda. Entendemos que la cantidad de tiempo que ha transcurrido, independientemente de si se ha celebrado la conferencia con antelación al juicio, milita fuertemente en contra de permitir la reconvención. No podemos permitir que los casos tengan vida eterna.[9]

En cuanto al segundo factor, la razón de la demora, ya señalamos que Real Legacy se ha limitado a aseverar que la "base factual" de la reconvención no surgió hasta el 2008, cuando se anunció la naturaleza del testimonio del Inspector-Fire Marshal. En cuanto a ello, nos reafirmamos en que dicha aseveración es inmeritoria, según expusiéramos anteriormente.

El tercer factor, el perjuicio causado a la otra parte, es determinante, según indicamos en S.L.G. Sierra v. Rodríguez, *supra*. La Opinión del Tribunal descansa fuertemente en dicha decisión por lo que resulta pertinente reseñar los hechos que dieron lugar a nuestra determinación

---

[9] Real Legacy alega que el Tribunal de Primera Instancia permitió a los demandantes presentar una Cuarta Demanda Enmendada para traer a un nuevo co-demandado y que, como "lo que es igual no es ventaja", se les debe permitir su reconvención. Alegato de Réplica, pág. 5. Real Legacy, o cualquier parte que se opusiera a la enmienda, debió alegarlo oportunamente. Además, en vista del cuadro fáctico específico de este caso, resulta improcedente que intente escudarse en que a los demandados se le permitió una enmienda para zafarse de justificar su incumplimiento con las reglas procesales aplicables.

en aquel momento y distinguirla del caso de autos. Dicho caso versaba sobre una acción de división de comunidad de bienes presentada por un matrimonio en contra de una persona que había sostenido una relación sentimental con uno de los cónyuges. Los demandantes solicitaron enmendar su demanda para añadir una causa de acción por daños y perjuicios y otra por cobro de dinero, así como para elaborar sobre hechos ya alegados en la demanda original. Luego de analizar la naturaleza de las enmiendas y concluir que éstas no entrañarían perjuicio a la parte contraria, las permitimos. A diferencia del caso ante nuestra consideración, S.L.G. Sierra v. Rodríguez, *supra*, no versaba sobre una reconvención compulsoria omitida, ni se trataba de un caso de cientos de demandantes y múltiples demandados. Más bien, involucraba a tres personas y, al momento en que se solicitó la enmienda a las alegaciones, sólo habían transcurrido un año y cuatro meses desde que se presentó la contestación a la demanda, no casi ocho años como ocurrió en el caso de autos.

En este caso, el Tribunal no sólo ignora las marcadas diferencias entre los hechos de ese caso y del que nos ocupa, sino que tampoco hace un análisis adecuado sobre el posible perjuicio que implica permitir la reconvención. Más bien, el Tribunal despacha el asunto livianamente y virtualmente releva de su responsabilidad a la parte que falló al no formular oportunamente su reconvención ni demostrar que su omisión es excusable. De esta manera se perjudica a la parte a quien las Reglas de Procedimiento Civil, de ser aplicadas correctamente, favorecen. Además, el proceder del Tribunal

equivale a crear una presunción de que la enmienda procede, la cual entonces deberá ser refutada por la parte que se opone. Dicha acción no encuentra apoyo en nuestro ordenamiento procesal civil.

En el caso de autos, correspondía a Real Legacy demostrar que no les causaría perjuicio a los demandantes que se le permitiera enmendar su contestación a la demanda para incluir la reconvención compulsoria, mas no lo hizo. **Contrario a una mayoría de este Tribunal, entendemos que se causa un perjuicio gravísimo a los demandantes y a los demás demandados si, a estas alturas de los procedimientos, se le permite a Real Legacy presentar la reconvención. Ello, pues autorizarla conllevaría esencialmente el inicio de un nuevo pleito con todo lo que eso implica, como, por ejemplo, nuevas alegaciones y descubrimiento de prueba. En este caso se han demorado prácticamente una década en realizar el descubrimiento de prueba relativo a la demanda. Es absurdo pensar que esta reconvención no retrasará la resolución del caso en perjuicio de los demandantes.[10]**

IV.

En resumen, entendemos que permitir la reconvención en este caso es contrario a derecho, pues no responde a la correcta aplicación de nuestras Reglas de Procedimiento Civil, *supra*, ni de su jurisprudencia interpretativa. Ello redunda en una grave injusticia para las decenas de personas que desde hace una década reclaman ser resarcidos por la

---

[10] En lo que respecta a la procedencia de la enmienda solicitada, es evidente que la misma no procede a la luz de lo resuelto den S.L.G. Sierra v. Rodríguez, *supra*.

pérdida de la propiedad que guardaban en los almacenes de Mini-Warehouse. Además, la decisión del Tribunal refrenda lo que a nuestro juicio constituye una táctica dilatoria de Real Legacy con el fin de retrasar indebidamente los procedimientos. Es evidente que Real Legacy tenía conocimiento del contenido del informe del Inspector-Fire Marshal desde mucho antes de presentar la reconvención. Es dicho documento, y no el anuncio de los demandantes de que el Inspector-Fire Marshal declararía sobre el mismo, lo que daría lugar a una posible reclamación de Real Legacy. Sin embargo, el Tribunal avala este argumento y, además, emplea erróneamente la normativa aplicable en perjuicio de la economía procesal y de la justicia.

Premiar la desidia de dicha aseguradora permitiendo una reconvención a estas alturas perjudica gravemente la percepción de la ciudadanía sobre la eficiencia de los procedimientos judiciales. En efecto, lo que hace este Tribunal es recompensar a una parte que mediante tácticas procesales ha impedido que se haga justicia con la rapidez que el Pueblo de Puerto Rico espera de los que tenemos el privilegio de ser garantes de nuestro sistema judicial.

Por todo lo anterior, disentimos.


                                        Federico Hernández Denton
                                             Juez Presidente