ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| BRENDA LIZ MORALES SANTIAGO Y OTROS<br><br>Apelantes<br><br>v.<br><br>DRA. MARÍA DEL PILAR BRAVO Y OTROS<br><br>Apelados | KLAN202400631 | Recurso de *Apelación* procedente del Tribunal de Primera Instancia, Sala de Arecibo<br><br>Caso Núm. CDP2018-0007<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de enero de 2025.

Comparecen Brenda Liz Morales Santiago ("Sra. Morales") y Elliot Giraud ("Sr. Giraud") (en conjunto, "matrimonio Giraud-Morales" o "Apelantes") mediante apelación y solicitan la revisión de la *Sentencia* emitida el 23 de agosto de 2023, por el Tribunal de Primera Instancia, Sala de Arecibo ("TPI"). Mediante el referido dictamen, el TPI declaró *No Ha Lugar* la reclamación sobre daños y perjuicios instada por los Apelantes en contra de la Dra. María del Pilar Bravo ("Dra. Bravo" o "Apelada").

Por los fundamentos que expondremos a continuación, se *Confirma* la *Sentencia* apelada.

**I.**

El 12 de enero de 2018, la Sra. Morales y su esposo, el Sr. Giraud, instaron ante el TPI una *Demanda* en daños y perjuicios en contra de la Dra. Bravo. Posteriormente, el 5 de marzo de 2018, el matrimonio Giraud-Morales presentó una *Demanda Enmendada*, a los efectos de incluir nuevos daños provocados por la negligencia de la Apelada.

Los Apelantes señalaron que, el 13 de febrero de 2017, la Dra. Bravo le realizó a la Sra. Morales una intervención quirúrgica de esterilización de

acceso vaginal, conocido como VBPS. El matrimonio Giraud-Morales sostuvo que, la Dra. Bravo incumplió con la mejor práctica de la medicina al: (1) no explicarle a la Sra. Morales Santiago sobre el procedimiento ni las alternativas quirúrgicas disponibles, lo que provocó que no prestara un consentimiento informado, y; (2) no utilizar el procedimiento menos invasivo, conocido como Laparoscopia. Además, alegaron que, el procedimiento le ocasionó a la Sra. Morales una laceración en el intestino. Asimismo, adujeron que, la negligencia de la Dra. Bravo le ocasionó daños físicos a la Sra. Morales, así como angustias y sufrimientos mentales al matrimonio Giraud-Morales.

Luego de varios trámites procesales, los días 6, 7 y 8 de julio de 2022 y 4 de mayo de 2023, el TPI celebró el juicio en su fondo. Durante el juicio, el matrimonio Giraud-Morales presentó los siguientes testimonios: (1) Dra. Bravo; (2) Sra. Morales; (3) Sr. Giraud, y; (4) el perito, Dr. Alonso Serrano Insern ("Dr. Serrano"). Por su parte, la Dra. Bravo presentó el testimonio del perito, el Dr. Alberto De la Vega Pujol ("Dr. De la Vega"). Las partes estipularon como prueba documental los récords médicos de la Sra. Morales y los informes periciales.

Aquilatada la prueba testifical y documental, el 22 de agosto de 2023, el TPI emitió una *Sentencia,* notificada el 23 de agosto de 2023. El foro de instancia puntualizó lo siguiente:

> [L]a propia prueba presentada por la parte demandante y creída por este Tribunal no sustenta la teoría de responsabilidad aducida por el perito de la parte demandante. Por el contrario, la prueba desfilada nos convence de que el proceso de consentimiento tomado a la paciente fue uno adecuado y así qued[ó] debidamente documentado en el expediente médico. Por otra parte, resulta forzoso concluir que el procedimiento quirúrgico de esterilización mediante acceso vaginal realizado a la Sra. Morales y el posterior diagnóstico y tratamiento brindado por la Dra. Bravo, una vez la paciente presenta una complicación post quirúrgica, cumplió con la atención que se requiere a la luz de los modernos medios de comunicación y enseñanza, y conforme al estado de conocimiento de las ciencias y practica prevaleciente en la ginecología y obstetricia, satisfaciendo las exigencias generalmente reconocidas por esta.[1]

---

[1] Véase Apéndice de la Parte Apelante, a la pág. 84.

Así, concluyó que, el tratamiento ofrecido por la Dra. Bravo cumplió con la atención requerida a la luz de los modernos medios de comunicación y enseñanza, y conforme al estado de conocimiento de las ciencias y la práctica prevaleciente en la ginecología y obstetricia, satisfaciendo las exigencias generalmente reconocidas por esta. Por otra parte, el TPI destacó que, el matrimonio Giraud-Morales no logró demostrar que el consentimiento no fuera informado, que el procedimiento de esterilización utilizado por la Dra. Bravo estuviera prohibido, ni que hubo una perforación como consecuencia de tal procedimiento.

Inconformes, el 6 de septiembre de 2023, el matrimonio Giraud-Morales presentó una *Solicitud de Reconsideración y Solicitud de Determinaciones de Hechos Adicionales*. Por su parte, el 4 de octubre de 2023, la Dra. Bravo presentó su *Oposición a Solicitud de Reconsideración y Determinaciones de Hechos Adicionales*. El 7 de junio de 2024, el TPI declaró *No Ha Lugar* la solicitud de reconsideración y determinaciones de hechos adicionales instada por los Apelantes.

Insatisfechos aún, el 2 de julio de 2024, el matrimonio Giraud-Morales acudió ante esta Curia mediante *Escrito de Apelación Civil*. Los Apelantes señalaron los siguientes errores:

**Erró el TPI en no encontrar negligencia por la utilización de un procedimiento obsoleto, de poca a ninguna visión, más invasivo, riesgo de infección, riesgos de vaginosis bacterial, y de perforación por falta de visibilidad, y de no detectar la perforación.**

**Erró el TPI en no determinar que la demandada no ofreció el procedimiento menos invasivo, Laparoscopia, el cual es el estándar en cirugías Interval.**

**Erró el TPI en no determinar que debió haber un consentimiento informado más completo y concienzudo.**

El 31 de julio de 2024, los Apelantes presentaron la Transcripción de la Prueba Oral ("TPO") vertida durante los días 6 de julio de 2022 y 4 de mayo de 2023. Posteriormente, el 18 de octubre de 2024, el matrimonio Giraud-Morales presentó la TPO, correspondiente a los días 7 y 8 de julio de 2022.

Por su parte, el 13 de diciembre de 2024. La Dra. Bravo presentó su *Alegato e Oposición a la Apelación.* Aquilatado el expediente apelativo y los autos originales, así como el derecho aplicable, estamos en posición de resolver.

**II.**

**-A-**

La tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende, en gran medida, de la exposición del juzgador de los hechos a la prueba presentada, lo cual incluye, ver el comportamiento del testigo y escuchar su voz, mientras ofrece su testimonio. *Robert Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.,* 209 DPR 759, 778 (2022). De ahí que, los tribunales apelativos no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, salvo que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Íd.* Cuando la alegación es de pasión, prejuicio o parcialidad, el llamado a los foros apelativos es verificar, primordialmente, si el juzgador de los hechos cumplió con su función de adjudicar de manera imparcial. *Gómez Márquez et al. v. El Oriental Inc.*, 203 DPR 783, 793 (2020). Solo así podremos apoyar sus determinaciones de hechos. *Íd.*

Por otro lado, constituye error manifiesto cuando, de un análisis de la totalidad de la evidencia, el foro apelativo se convence de que se cometió un error, independientemente de que exista evidencia que sostenga las conclusiones de hecho del Tribunal. *Íd.* De manera que, la facultad de los foros apelativos para sustituir el criterio de los tribunales de instancia se limita a aquellos escenarios, en los cuales, de la prueba admitida no surge base suficiente que apoye su determinación. *Robert Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., supra.* Como se sabe, las diferencias de criterio jurídico no alcanzan dicho estándar. *Íd.*

Ahora bien, cabe destacar que, en ausencia de evidencia oral, el Tribunal de Apelaciones carece de los elementos para descartar la

apreciación razonada y fundamentada de la prueba que realizó el Tribunal de Primera Instancia. *Hernández Maldonado v. Taco Maker,* 181 DPR 281, 289 (2011).

Como vemos, nuestro esquema probatorio está revestido de un manto de deferencia hacia las determinaciones de credibilidad que realizan los juzgadores de instancia, con respecto a la prueba testifical presentada ante sí. *Pueblo v. Arlequín Vélez*, 204 DPR 117, 146-147 (2020). Lo anterior, en reconocimiento a la oportunidad que tiene el foro primario de ver y observar a los testigos declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones con el efecto de ir formando gradualmente, en su conciencia, la convicción sobre si dicen o no la verdad. *Íd.*, págs. 857-858.

**-B-**

Un perito es una persona que, a través de la educación o experiencia, ha desarrollado un conocimiento o destreza sobre una materia de manera que puede formar una opinión que sirva de ayuda al juzgador. *S.L.G. v. Mini-Warehouse*, 179 DPR 322, 338 (2010), citando a *Black's Law Dictionary,* 8va ed., Minnesota, Ed. Thomson West, 2004, pág. 619. A esos fines, la Regla 703 de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 703, regula la normativa vinculada con los peritos:

> (a) Toda persona está calificada para declarar como testigo pericial si posee especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficiente para calificarla como experta o perita en el asunto sobre el cual habrá de prestar testimonio. Si hubiere objeción de parte, dicho especial conocimiento, destreza, adiestramiento o instrucción deberá ser probado antes de que la persona testigo pueda declarar como perita.
>
> (b) El especial conocimiento, destreza, experiencia, adiestramiento o instrucción de una persona que es testigo pericial podrá ser probado por cualquier evidencia admisible, incluyendo su propio testimonio.
>
> (c) La estipulación sobre la calificación de una persona perita no es impedimento para que las partes puedan presentar prueba sobre el valor probatorio del testimonio pericial.

Como cualquier otro testigo, su función es dar a conocer la verdad derivada de su conocimiento especializado. *Rivera Gómez v. Arcos Dorados*

*Puerto Rico, Inc.*, 212 DPR 194, 207 (2023). Este brinda su ayuda al juzgador en el proceso de adjudicación de una controversia, por lo que, la determinación de su calificación debe producirse mediante un ponderado y juicioso ejercicio de discreción por parte de dicho juzgador. *Díaz v. Pneumatics & Hydraulics*, 169 DPR 273, 293 (2006). La carencia de determinada especialidad afecta el peso de la prueba pericial pero no incide en su cualificación del perito. *Íd.*, pág. 295. Más bien, la consideración de tal carencia tiene relevancia en la apreciación del valor probatorio de su declaración. *Íd.*

Así, pues, el valor probatorio del testimonio pericial depende del análisis de determinados factores, tales como: (1) si el testimonio está basado en hechos o información suficiente; (2) si el testimonio es el producto de principios y métodos confiables; (3) si la persona testigo aplicó los principios y métodos de manera confiable a los hechos del caso; (4) si el principio subyacente al testimonio ha sido aceptado generalmente en la comunidad científica; (5) las calificaciones o credenciales de la persona testigo, y (6) la parcialidad de la persona testigo. *S.L.G. v. Mini-Warehouse*, *supra*, pág. 344. Véase, también, *Dye-Tex Puerto Rico, Inc. v. Royal Ins. Co. of Puerto Rico, Inc.*, 150 DPR 658 (2000).

Este análisis probatorio está sujeto a la apreciación que emita el juzgador de los hechos, lo cual, como norma general, merece nuestra deferencia. No obstante, en cuanto a la prueba pericial puntualizamos que, no estamos obligados a seguir indefectiblemente la opinión, el juicio, la conclusión o la determinación de un foro adjudicativo, pues estamos en plena libertad de adoptar nuestro criterio propio en la apreciación o la evaluación de la prueba pericial e incluso podemos descartar la misma, aunque resulte ser técnicamente correcta. *Culebra Enterprises Corp. v. ELA,* 143 DPR 935, 952 (1997). Igual norma aplica a la evaluación de prueba documental en cuyo caso estamos en idéntica posición que el juzgador de los hechos. *Trinidad v. Chade*, 153 DPR 280, 292 (2001).

**-C-**

Nuestro ordenamiento jurídico confiere una causa de acción en daños y perjuicios a todo aquel que sufra un daño por las acciones u omisiones culposas o negligentes de otro. *González Cabán v. JR. Seafood et al.*, 199 DPR 234 (2017). El Artículo 1802 del Código Civil de 1930, 31 LPRA ant. sec. 5141, regula la responsabilidad civil extracontractual y establece que "*[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado*".

Para que prospere una acción por daños y perjuicios bajo este artículo, es necesario probar la ocurrencia de una acción u omisión culposa o negligente que ocasiona un daño y la existencia del nexo causal entre ambos. *Colón Santos v. Coop. Seg. Mult. P.R.*, 173 DPR 170, 177 (2008). En otras palabras, procede la reparación de un daño cuando se demuestran los siguientes elementos: (1) la existencia de una acción u omisión producto del acto ilícito extracontractual; (2) la antijuricidad de la misma; (3) la culpa o negligencia del agente; (4) la producción de un daño, y; (5) la relación de causa o efecto entre la acción u omisión y el daño. *Valle v. ELA*, 157 DPR 1, 14 (2002). Recae sobre la parte que solicita ser indemnizada el deber de establecer, mediante preponderancia de la prueba, todos los elementos de la causa de acción por daños y perjuicios. *SLG Colón-Rivas v. ELA*, 196 DPR 855 (2016).

Particularmente, nuestro ordenamiento ha reconocido que, en una acción en daños y perjuicios por impericia médica instada bajo el citado precepto, **el demandante tiene que demostrar, además, cuáles son las normas mínimas de conocimiento y cuidado médico aplicables a los generalistas o a los especialistas; demostrar que el demandado incumplió con estas normas en el tratamiento del paciente; y que esto fue la causa de la lesión sufrida por el paciente**. (Énfasis suplido). *Medina Santiago v. Vélez*, 120 DPR 380, 386 (1988); *Arrieta v. De la Vega*, 165 DPR 538 (2005).

**-D-**

Por otra parte, en nuestro ordenamiento también se ha reconocido una causa de acción de impericia profesional basada en falta de consentimiento informado bajo el Artículo 1802. Véase *Montes v. Fondo del Seguro del Estado*, 87 DPR 1999 (1963); *Torres Pérez v. Hosp. Dr. Susoni, Inc.,* 95 DPR 867 (1968); *Rodríguez Crespo v. Hernández*, 121 DPR 639 (1988). La doctrina de consentimiento informado establece que, todo paciente tiene el derecho de tomar decisiones informadas respecto a la intervención médica a la que habrá de someterse. *Lozada Tirado et al. v. Testigos de Jehová*, 177 DPR 893, 911 (2010) citando *Sepúlveda de Arrieta v. Barreto*, 137 DPR 735, 742 (1994).

En otras palabras, la doctrina les impone a los médicos el deber de ofrecer a sus pacientes toda la información que sea indispensable para comprender la naturaleza de cierto procedimiento, lo que debe incluir datos sobre los beneficios, los riesgos y las posibles complicaciones. *Martínez Marrero v. González Droz*, 180 DPR 579, 593 (2011). Nuestro Tribunal Supremo ha enfatizado que, "*[e]l médico tiene la obligación de divulgarle al paciente los riesgos razonablemente previsibles, así como los beneficios de tratamientos y procedimientos invasivos del cuerpo humano y de las alternativas disponibles*". *Rodríguez Crespo v. Hernández, supra*, pág. 664.

Al adjudicar una acción de impericia médica por falta de consentimiento informado, se deberá considerar: (1) si el médico tenía el deber de divulgar determinada información; (2) la información específica que debía ser divulgada; y (3) si la causa adecuada o eficiente del daño fue la falta de divulgación de esa información. *Santiago Otero v. Méndez*, 135 DPR 540 (1994). De igual modo, la parte demandante deberá presentar prueba sobre las normas de consentimiento informado aplicables al caso y la razón por la cual el médico incumplió con ellas. *Rodríguez Crespo v. Hernández, supra*, pág. 666.

**III.**

Los Apelantes nos solicitan que revoquemos la *Sentencia*, mediante la cual el foro primario desestimó con perjuicio la demanda instada en contra de la Dra. Bravo. Particularmente, el matrimonio Giraud-Morales sostiene que el foro apelado incidió al determinar que la Dra. Bravo no fue negligente al utilizar un procedimiento obsoleto. Asimismo, arguyen que, el TPI erró al no sostener que la Apelada debió utilizar el método menos invasivo, Laparoscopía. Alegan, además, la Sra. Morales no prestó un consentimiento informado.

Por su parte, la Dra. Bravo expresa que, la propia prueba presentada por el matrimonio Morales-Giraud no sustentó la teoría de responsabilidad aducida por estos. Indica, además, que no surgió del testimonio de los peritos, ni de la literatura médica que la Laparoscopia fuera el estándar en cirugías de esterilización. A su vez, apuntó que se llevó a cabo un consentimiento informado y que, no existe alegación respecto a que información adicional hubiera cambiado la decisión de la Sra. Morales de someterse a una esterilización vaginal.

Por estar intrínsicamente relacionados, los errores primero y segundo serán discutidos de manera conjunta. En síntesis, los Apelantes sostienen que, quedó evidenciado que, la Dra. Bravo utilizó un procedimiento de esterilización obsoleto o en desuso, que conllevaba mayores riesgos, en comparación al procedimiento conocido como Laparoscopia. No les asiste la razón. Veamos.

Es norma reiterada que, como foro apelativo intermedio, no debemos intervenir con la apreciación de la prueba del foro primario, a menos que medie pasión, prejuicio, parcialidad o error manifiesto. Evaluada la prueba testifical y documental que se presentó en el juicio en su fondo, no encontramos razón alguna para negarle deferencia a la apreciación de la prueba realizada por el TPI. Asimismo, de un estudio de la transcripción de la prueba oral y del expediente ante nos, surge que el matrimonio Giraud-

Morales no logró evidenciar que el cuidado de la Dra. Bravo fue inadecuado o se apartó de las mejores prácticas de la medicina.

Por otra parte, en cuanto a la prueba pericial presentada ante el foro de instancia, estamos facultados para adoptar nuestro propio criterio. *Culebra Enterprises Corp. v. ELA, supra.* Así pues, evaluada la prueba pericial, concluimos que, los peritos provistos por las partes, el Dr. Serrano y el Dr. De la Vega, lograron convencer al foro de instancia sobre la ausencia de negligencia en el tratamiento médico ofrecido por la Dra. Bravo.

En primer lugar, el perito de la parte apelante, el Dr. Serrano, opinó que, la esterilización por la vía vaginal había sido abandonada a favor de otros procedimientos. No obstante, admitió que, conforme a la literatura médica, en los casos donde se hace una Fimbriectomía, como el de la Sra. Morales, está justificado utilizar el acceso vaginal.[2]

En segundo lugar, el perito de la parte apelada, el Dr. De la Vega, expresó que, al presente, la esterilización de tipo vaginal se sigue enseñando en la Residencia de Obstetricia y Ginecología del Hospital Universitario, como una alternativa quirúrgica.[3] Puntualizó que, con el tiempo, ciertas cirugías se han popularizado más que otras, pero que, esto no significaba que la esterilización vaginal estuviera prohibida o se hubiera abandonado como opción.[4] Asimismo, el Dr. De la Vega detalló que, los procedimientos por la vía abdominal, tales como la Laparoscopia, conllevan riesgos similares a los de acceso vaginal, ya que al pasar un punzón por el abdomen se podría perforar el intestino.[5] Expuso, además, que, en términos de visibilidad para el médico, la esterilización vaginal es igual de poco visible que la Laparotomía o la Laparoscopia.[6]

Conforme surge de la prueba pericial y documental, el procedimiento realizado por la Dra. Bravo no se apartó de la mejor práctica de la medicina.

---

[2] Véase, TPO del 6 de julio de 2022, a la pág. 202.
[3] Véase, TPO del 4 de mayo de 2023, a la pág. 107.
[4] Véase, TPO del 4 de mayo de 2023, a las págs. 107-108.
[5] *Íd.*
[6] Véase, TPO del 4 de mayo de 2023, a las págs. 199-200.

Por tanto, los primeros dos errores no fueron cometidos por el foro de instancia.

Por otro lado, mediante el tercer señalamiento de error, el matrimonio Giraud-Morales alega que la Sra. Morales no prestó un consentimiento informado. Tampoco les asiste la razón. Explicamos.

A la luz del derecho aplicable, previo a un procedimiento quirúrgico, el médico debe ofrecerle al paciente toda aquella información necesaria para comprender la naturaleza del procedimiento. Entre los datos que el galeno deberá ofrecer se encuentran las alternativas disponibles y los riesgos razonablemente previsibles. Para prevalecer en un reclamo sobre falta de consentimiento informado, el demandante tendrá que demostrar la razón por la cual el médico incumplió con las normas de consentimiento informado aplicables al caso.

En el caso de autos, las partes estipularon el récord médico de la Sra. Morales. Del mismo, surge el *Consentimiento Informado* firmado por la Sra. Morales el 7 de febrero de 2017. Aquilatada la prueba testifical y documental, el foro de instancia determinó lo siguiente sobre el consentimiento prestado:

> 8. El documento de consentimiento informado para la esterilización vaginal fue firmado por la Sra. Morales el 7 de febrero del 2017 y aun cuando inicialmente testificó que la firma no es de ella, después indicó que ella posiblemente firmó ese documento el mismo día de la cirugía.
>
> […]
>
> 15. Según surge de la nota del récord y así declarado por la Dra. Bravo, en la visita del 7 de febrero del 2017 se le explica a la Sra. Morales sobre los métodos de esterilización, los riesgos y beneficios y todas las preguntas le fueron contestadas.
>
> […]
>
> 20. La nota del 7 de febrero del 2017 establece que la paciente fue orientada sobre los 3 tipos de procedimientos para la esterilización, a saber, el acceso vaginal, laparoscopía y la mini lap o cirugía abierta, se le explica que cualquiera de los métodos que escoja puede terminar en una cirugía abierta y se le orienta sobre el riesgo de perforación de útero, vejiga o intestino, contestándose todas las preguntas.
>
> […]

22. Luego de que la Sra. Morales toma su decisión en cuanto al tipo de esterilización, se procedió a firmar el consentimiento informado para la misma por parte de la paciente y la Dra. Bravo, luego de lo cual ella se lleva el original del documento para la autorización del plan y la preadmisión que tenía que hacer en el hospital.[7]

Según hemos reiterado, como foro apelativo no debemos intervenir con la apreciación de la prueba del foro juzgador. Conforme surge de la *Sentencia*, al aquilatar la prueba vertida durante el juicio, el TPI concluyó lo siguiente:

> [S]in lugar a duda[,] concluimos que la Sra. Morales firmó el documento de consentimiento informado ese 7 de febrero del 2017. Durante su testimonio[,] esta pretendió desligarse de la firma que aparecía en el documento, sin embargo, hemos revisado los documentos estipulados por las partes y la firma de la Sra. Morales que aparece en estos y no tenemos que ser expertos en caligrafía para concluir que son las mismas. Por ello[,] concluimos que el testimonio de la Sra. Morales no nos mereció credibilidad alguna al indicar que ella no firmó el 7 de febrero del 2017 el consentimiento informado y que probablemente lo pudo haber hecho el 13 de febrero estando en el proceso de comenzar la cirugía, como pretendió establecer. **Su inconsistencia en el testimonio[,] unido al hecho de tratar de desligarse de los documentos que fueron firmados por ella cuando lógicamente no le favorecían, simplemente le restó la credibilidad necesaria para que este tribunal lo considerara al evaluar si el procedimiento para completar el consentimiento informado fue debidamente efectuado por la Dra. Bravo**.[8]

(Énfasis suplido)

Así, pues, examinada la transcripción de la prueba oral y la prueba documental, entendemos que, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, no se justifica nuestra intervención con la apreciación que le mereció el foro sentenciador. Resulta forzoso concluir que el foro de instancia no incidió al determinar que la Sra. Morales prestó un consentimiento informado.

**IV.**

Por los fundamentos que anteceden, se *Confirma* la *Sentencia* apelada.

---

[7] Véase, Apéndice de la Parte Apelante, a las págs. 59-61.
[8] *Íd.*, a la pág. 87.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones