Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| JOHAN MÉNDEZ GRAJALES Y SONIA GRAJALES SANTANA<br><br>Recurridos<br><br>V.<br><br>DOCTORS' CENTER HOSPITAL BAYAMÓN, INC., DRA. ANA SUÁREZ NIEVES Y OTROS<br><br>Peticionarios | TA2025CE00074 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm.: BY2024CV01521<br><br>Sobre: Impericia médica |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de julio de 2025.

Comparecen ante nos Doctor's Center Hospital Bayamón, Inc. (Hospital) y The Medical Protective Company (MEDPRO) (en conjunto, parte peticionaria) en solicitud de que revisemos una *Orden* emitida y notificada el 13 de mayo de 2025 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI).[1] En dicho dictamen, el Foro Primario declaró No Ha Lugar la solicitud de la parte peticionaria para fijar los honorarios del perito médico del señor Johan Méndez Grajales y su madre, la señora Sonia Grajales Santana (en conjunto, familia Méndez-Grajales o parte recurrida).

Por los fundamentos que expondremos a continuación, se adelanta la expedición del auto de *certiorari* y revocación de la determinación recurrida.

**I.**

El presente caso tuvo su origen el 15 de marzo de 2024, cuando la familia Méndez-Grajales presentó una *Demanda* por daños y

---

[1] Entrada Núm. 67 del expediente digital del caso BY2024CV01521 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

perjuicios y daños punitivos contra Doctor's, la Dra. Ana Suárez Nieves, MEDPRO, SIMED, Puerto Rico Insurance Company y otros demandados desconocidos.[2] Entre sus alegaciones, arguyó que el señor Méndez Grajales sufrió daños como resultado de una alegada negligencia médica y hospitalaria, ocurrida durante una intervención quirúrgica en la que se le laceró el conducto biliar.

Tras varios trámites procesales, el 7 de mayo de 2025, la Dra. Suárez Nieves y SIMED presentaron una *Moción Solicitando Regulación de Honorarios de Perito*.[3] En esta, informaron su intención de tomar deposición al perito de la parte recurrida, el Dr. Carl Warren Adams. No obstante, señalaron que la familia Méndez-Grajales notificó que los honorarios del experto por la deposición eran $5,000.00 por cuatro (4) horas garantizadas. Alegaron que dicha suma era excesiva, máxime que la deposición se realizaría por videoconferencia, sin necesidad de trasladarse. Por ello, solicitaron que el TPI ajustara los honorarios a un mínimo de tres (3) horas a razón de $200.00 por hora y la misma tarifa por cada hora o fracción de hora adicional, conforme a la Regla 23.1(c)(3) de Procedimiento Civil, 32 LPRA Ap. V, R. 23.1(c)(3). Asimismo, peticionaron regular los honorarios en atención al área, especialidad y pericia del testigo.

Por su parte, el 12 de mayo de 2025, la familia Méndez-Grajales presentó una *Oposición a "Moción Solicitando Regulación de Honorarios de Perito"*.[4] En primer lugar, argumentó que la Dra. Suárez Nieves y SIMED no gestionaron extrajudicialmente una solución de la controversia relacionada con los honorarios periciales, previo a requerir la asistencia del Tribunal. En segundo lugar, detalló que el Dr. Adams era un cirujano especializado en cirugía cardiovascular, torácica, trauma y cuidado intensivo quirúrgico, con

---

[2] Entrada Núm. 1 en SUMAC.
[3] Entrada Núm. 62 en SUMAC.
[4] Entrada Núm. 64 en SUMAC.

más de cuarenta (40) años de experiencia tanto en el ámbito militar como civil. Afirmó que contaba con licencias vigentes en California, Colorado, Hawaii y Dakota del Sur, además de poseer múltiples distinciones, certificaciones y entrenamientos. Enfatizó que tales cualificaciones le otorgaban un alto grado de credibilidad.

También, sostuvo que la parte peticionaria no discutió ninguno de los factores relevantes para fijar una compensación adecuada, ni relacionó la solicitud con la experiencia, el conocimiento y el adiestramiento del Dr. Adams, ni con la naturaleza del caso. Adujo que en Puerto Rico no había un cirujano de su calibre dispuesto a testificar en contra de sus colegas ni de los hospitales.

Además, indicó que la parte peticionaria tenía la obligación de pagar el tiempo que el perito invirtió en la revisión de los récords médicos como parte de su preparación para la deposición. Destacó que el Dr. Adams no ha modificado su honorario habitual en ningún caso que ha comparecido como perito en Puerto Rico. Finalmente, recalcó que el costo de la deposición sería menor para cada demandado, ya que este sería compartido entre la Dra. Suárez Nieves y Doctor's.

Al día siguiente, Doctor's y MEDPRO solicitaron prórroga para expresar su posición respecto a la regulación de los honorarios del perito.[5] Empero, ese mismo día, el Foro recurrido emitió una *Orden* mediante la cual dispuso que no se admitirían réplicas ni dúplicas.[6]

En igual fecha, el TPI emitió una *Orden* en la que declaró No Ha Lugar la solicitud para regular los honorarios del perito, al acoger los fundamentos esbozados por la parte recurrida.[7]

Inconformes, el 21 de mayo de 2025, la parte peticionaria presentó una *Moción de Reconsideración*.[8] Mediante esta, planteó que

---

[5] Entrada Núm. 65 en SUMAC.
[6] Entrada Núm. 66 en SUMAC.
[7] Entrada Núm. 67 en SUMAC.
[8] Entrada Núm. 68 en SUMAC.

no se les brindó la oportunidad de fijar su postura sobre el asunto antes de que el tribunal resolviera. Indicó que la prórroga solicitada se presentó oportunamente, sin provocar dilaciones indebidas ni perjuicios. Alegó que dicha actuación vulneró su derecho al debido proceso de ley, al impedirle presentar argumentos en defensa de sus intereses sobre asuntos que le impactaban directamente.

Asimismo, reiteró su solicitud para que los honorarios del perito fueran ajustados a una suma razonable a fin de garantizar la equidad procesal y evitar cargas desproporcionadas. Apuntó que correspondía al tribunal evaluar la razonabilidad de la compensación reclamada por el Dr. Adams por su testimonio pericial. Sostuvo que no podía ser penalizado por la decisión de la familia Méndez-Grajales de contratar un perito de Colorado, particularmente cuando sus honorarios no eran razonables en esta jurisdicción.

Añadió que, de acuerdo con la Regla 26(b)(4)(c) de Procedimiento Civil federal, los honorarios por una deposición se limitaban al tiempo utilizado para deponer, sin incluir el periodo de preparación. A su vez, subrayó que la deposición se iba a realizar por videoconferencia, sin que el perito interrumpiera su jornada laboral ni reservara el día entero.

De otro lado, aludió que en otros procedimientos judiciales, dos (2) jueces del TPI habían regulado los honorarios del Dr. Adams a razón de $300.00 por hora. En virtud de ello, propusieron que una suma de $600.00 por tres (3) horas garantizadas resultaba razonable, en atención a la educación del perito, las tarifas comparables en Puerto Rico y la complejidad del caso.

Posteriormente, el 30 de mayo de 2025, la familia Méndez-Grajales presentó una *Oposición a "Moción de Reconsideración"*.[9] En esta, explicó que el Foro Primario tenía discreción para decidir si

---

[9] Entrada Núm. 69 en SUMAC.

admitía o no la presentación de réplicas y dúplicas, sin que ello constituyera abuso de poder. Además, precisó que Doctor's y MEDPRO tenían la oportunidad de exponer su posición desde que se presentó la solicitud de regulación de honorarios, pero optaron por no solicitarlo hasta después de que se presentó la oposición.

Por otro lado, alegó que correspondía a Doctor's y a la Dra. Suárez Nieves cubrir los honorarios del perito, salvo que demostraran carecer de recursos económicos. Indicó que correspondía al tribunal evaluar la razonabilidad de los honorarios a la luz de la especialidad del testigo, su formación académica y profesional, las tarifas prevalecientes en la comunidad profesional bajo circunstancias similares, la complejidad del testimonio, el costo de vida en el área geográfica, el valor actual de los servicios del perito en su mercado, así como cualquier otro factor pertinente en el balance de intereses.

Puntualizó que el hecho de que otros tribunales regularon previamente los honorarios del Dr. Adams no implicaba que el TPI estuviera obligado a adoptar la misma determinación en este caso.

Así las cosas, el 2 de junio de 2025, el Tribunal *a quo* emitió y notificó su *Resolución Interlocutoria*, en la que declaró No Ha Lugar la reconsideración.[10] Además, concluyó que la suma de $200.00 por hora a un perito con esas cualificaciones era irrazonable.

Aún insatisfechos, el 2 de julio de 2025, Doctor's y MEDPRO presentaron un recurso ante este Tribunal, en el que plantearon que el Foro recurrido incurrió en el siguiente error:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR UNA RESOLUCIÓN SIN EXPRESARSE SOBRE LA RAZONABILIDAD DE LA SUMA DE $5,000.00 POR CUATRO HORAS (EQUIVALENTE A $1,250.00 POR HORA) SOLICITADA POR EL PERITO DE LA PARTE DEMANDANTE, DR. CARL WARREN ADAMS, LA CUAL ES DESPROPORCIONADA, ABUSIVA E IRRAZONABLE EN PUERTO RICO.

---

[10] Entrada Núm. 70 en SUMAC.

En esencia, sostuvieron que no se les brindó la oportunidad de expresar su posición sobre la regulación de los honorarios reclamados por el perito de la parte recurrida, aun cuando el asunto implicaba consecuencias económicas adversas en su contra. Alegaron que su debido proceso de ley exigía que el TPI les permitiera ser oídos antes de emitir una determinación adversa, y que la prohibición de replicar no satisfizo esa garantía constitucional.

Además, argumentaron que el Foro Primario concluyó que el honorario de $200.00 por hora era irrazonable, pero no se pronunció sobre la razonabilidad de los $5,000.00, equivalente a $1,250.00 por hora. Precisaron que esta actuación judicial constituyó un abuso de discreción, al validar una suma de honorarios notoriamente irrazonable e incompatible con la práctica en Puerto Rico.

Doctor's y MEDPRO indicaron que, al tratarse de un caso de impericia médica, el testimonio pericial aportaba el conocimiento técnico necesario para asistir al tribunal en su función adjudicativa. Las deposiciones, a su juicio, permitían una explicación detallada de los métodos, fundamentos y criterios del perito, lo que facilitaba la comprensión de aspectos complejos. Por tanto, sostuvieron que el tribunal debía fijar un monto razonable para los honorarios, a fin de evitar una carga económica excesiva que obstaculizara el acceso a un descubrimiento de prueba adecuado y completo.

Por su parte, el 8 de julio de 2025, la familia Méndez-Grajales presentó su oposición a la expedición del auto de *certiorari*. En resumen, expresó que la parte peticionaria incumplió con la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1, ya que la controversia no versaba sobre un remedio provisional ni sobre un *injunction*. Además, sostuvo que el TPI tenía discreción de admitir o denegar la presentación de réplicas y dúplicas, sin que constituyera un abuso de discreción o una actuación contraria a derecho, máxime que la deposición del Dr. Adams estaba pautada para el 3 de junio de 2025.

En cuanto a los honorarios del Dr. Adams, reconoció que cuando a un tribunal se le solicita regular los honorarios de los peritos, debe evaluar la razonabilidad, conforme lo siguiente: (a) especialidad del testigo; (b) educación y adiestramiento; (c) honorarios prevalecientes entre expertos similares; (d) naturaleza, calidad y complejidad de las respuestas ofrecidas; (e) costo de vida en el área geográfica; (f) honorarios cobrados a la parte que lo contrató; (g) honorarios usuales en casos similares y, (h) cualquier otro factor pertinente al balance de intereses implicados.

Basado en las cualificaciones del perito en cuestión, la parte recurrida aseveró que los honorarios solicitados por el Dr. Adams eran razonables, en atención a su formación académica, especialización y trayectoria profesional. Destacó que, aunque la deposición se realizaría por videoconferencia, el perito aún debía revisar los expedientes médicos y demás documentos necesarios como parte de su preparación, y que la parte peticionaria tenía la obligación de sufragar ese tiempo de trabajo. Además, reiteró que la parte peticionaria no probó estar imposibilitada económicamente para sufragar los honorarios del perito.

Sin embargo, expresó que la deposición del Dr. Adams era innecesaria, puesto que se le remitió su informe pericial a la parte peticionaria. De esta manera, planteó que la parte que solicitó el descubrimiento de prueba debía cubrir los costos. También, acentuó que, si bien otros tribunales regularon los honorarios del Dr. Adams, ello no obligaba al TPI a adoptar la misma decisión.

**II.**

**A. *Certiorari***

El *certiorari* es el vehículo procesal extraordinario que permite que un tribunal de mayor jerarquía revise las determinaciones de un tribunal inferior. *Rivera et al., v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821,

846-847 (2023); *McNeill Healthcare LLC v. Municipio De Las Piedras*, 206 DPR 391, 404 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *Medina Nazario v. McNeill Healthcare LLC*, 194 DPR 723, 728 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Contrario al recurso de apelación, el Tribunal de Apelaciones posee la facultad discrecional de expedir o denegar un recurso de *certiorari* ya que, de ordinario, se trata de asuntos interlocutorios. *Íd.*

La Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1, limita taxativamente las instancias en las que este Tribunal puede expedir un auto de *certiorari* sobre asuntos interlocutorios civiles. *McNeill Healthcare LLC v. Municipio De Las Piedras, supra*; *Scotiabank de Puerto Rico v. ZAF Corporation, et als.*, 202 DPR 478 (2019). En lo pertinente, el recurso procede únicamente para revisar resoluciones u órdenes bajo las Reglas 56 y 57 de Procedimiento Civil, *supra*, o la denegación de mociones dispositivas. Como excepción, se pueden revisar asuntos relacionados a la admisibilidad de testigos de hechos o peritos esenciales, privilegios evidenciarios, rebeldía, relaciones de familia, interés público u otra situación en la que esperar hasta la apelación constituiría un fracaso irremediable de la justicia. *Íd.*

Si el asunto interlocutorio no se encuentra dentro de las instancias antes mencionadas, este Tribunal carece de autoridad para intervenir. El propósito de esta normativa es evitar la dilación que implicaría la revisión inmediata de controversias que pueden atenderse mediante un recurso de apelación. *Scotiabank de Puerto Rico v. ZAF Corporation, et als., supra*, pág. 486; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 593-594 (2011).

Por otro lado, la Regla 40 del *Reglamento del Tribunal de Apelaciones, supra*, R. 40, establece los criterios que debemos considerar al ejercer nuestra facultad discrecional para atender una petición de *certiorari*. A saber, este Tribunal debe evaluar:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Si se deniega la expedición del auto de certiorari, no es necesario exponer las razones que sustentan dicha determinación. *Rivera Figueroa v. Joe's European Shop, supra*, pág. 594; *IG Builders et al. v. BBVAPR, supra*, pág. 336. En tal escenario, este Tribunal no asume jurisdicción sobre el asunto planteado ni dispone del este en sus méritos. *Torres González v. Zaragoza Meléndez, supra*, pág. 848; *McNeill Healthcare LLC v. Municipio De Las Piedras, supra*, pág. 405.

### B. Honorarios de peritos

Por otro lado, un perito es una persona que, por su educación y experiencia, desarrolló un conocimiento o una destreza sobre una materia de manera que puede formar una opinión que sirva de ayuda al juzgador. *SLG Font Bardón v. Mini-Warehouse*, 179 DPR 322 (2010); J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Puerto Rico, Publicaciones JTS, 2000, T. III, pág. 865. Al respecto, la Regla 23.1(c) de Procedimiento Civil, *supra*, R. 23.1(c) regula lo concerniente al descubrimiento de prueba pericial. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta. ed., Lexisnexis de Puerto Rico, Inc., San Juan, 2007, pág. 338. Dicha regla dispone lo siguiente:

(c) Peritos. El descubrimiento de prueba pericial podrá llevarse a cabo como sigue:

(1) Una parte podrá, a través de interrogatorios, requerir a cualquier otra parte que suministre el nombre y la dirección de las personas peritas que haya consultado y de los que intente presentar en el juicio. Respecto a estas últimas, podrá requerirse a la parte que exprese la materia sobre la cual la persona perita se propone declarar, así como un resumen de sus opiniones y una breve expresión de las teorías, los hechos o los argumentos que sostienen las opiniones. A solicitud de parte, el tribunal podrá ordenar el descubrimiento de prueba pericial por cualquier otro medio, sujeto a aquellas condiciones o limitaciones que estime razonables.

(2) Una parte podrá hacer uso de los métodos de descubrimiento en relación con hechos conocidos u opiniones de una persona perita que ha sido contratada por otra parte con anterioridad al pleito o en preparación para el juicio, y el cual no habrá de ser llamado a testificar solamente si se demuestra circunstancias excepcionales que hagan impráctico para la parte que interese el descubrimiento obtener hechos u opiniones sobre la misma materia, por otros medios o en el caso que dispone la Regla 32.2.

(3) El tribunal ordenará a la parte que solicita el descubrimiento que pague a la persona perita los honorarios razonables por el tiempo invertido durante el descubrimiento. Si la parte que interesa el descubrimiento de prueba pericial demuestra al tribunal que carece de los medios económicos para sufragar dichos honorarios, el tribunal podrá ordenar el descubrimiento en los términos y las condiciones que estime justos y razonables. [...] Regla 23.1(c) de Procedimiento Civil, *supra*, R. 23.1(c).

En cuanto a la razonabilidad de los honorarios de peritos por deposiciones, las Reglas de Procedimiento Civil, *supra*, de nuestra jurisdicción no establecen una cantidad fija que se deba pagar en honorarios a los peritos en el trámite del descubrimiento de prueba. J. Cuevas Segarra, *op. cit.*, pág. 882. No obstante, distintas jurisdicciones, incluyendo este Tribunal de Apelaciones, han adoptado el siguiente análisis esbozado en el caso *Jochims v. Isuzu Motors Ltd.*, 141 FRD 493 (S.D. Iowa 1992) para fijar los honorarios razonables de un perito en la etapa de descubrimiento de prueba:

(1) el área de especialización del testigo;

(2) la educación y entrenamiento requerido para ofrecer la opinión pericial;

(3) los honorarios predominantes de otros peritos disponibles con una reputación comparable;

(4) la naturaleza, calidad y complejidad de las respuestas ofrecidas en el proceso de descubrimiento de prueba;

(5) el costo de vida en la zona geográfica;

(6) los honorarios realmente facturados a quien contrató al perito;

(7) los honorarios tradicionalmente facturados por el perito en materias similares;

(8) cualquier otro factor que pueda ayudar al tribunal a equilibrar los intereses implicados en la regla.

*Íd.*, véase *Ochart Rivera v. Universal*, KLCE202201286 (2023); *Colóm Miranda v. Calderón Silva*, KLCE202100757 (2021); *Montalvo v. Hosp. De La Concepción*, KLCE2020000113 (2020); *Morales-Melecio v. Martínez Ortiz*, 2015 U.S. Dist. LEXIS 103894 (2015); *Lugo Cruz v. ELA*, KLCE201200379 (2012); *Prado Aponte v. Hosp. Ryder*, KLCE200900725 (2009); *Torres v. Comercio Cash & Carry, Inc.*, 2007 U.S. Dist. LEXIS 108799 (2007); *Estrada Lugo v. Universal*, KLCE200500124 (2005); *Nieves Figueroa v. Taboas*, KLCE200301215 (2005); *Hernández Pérez v. Specialties Constr.*, KLCE200200897 (2002); *Iglesias v. Harrington*, KLCE200000954 (2000); *Cabana v. Forcier*, 200 FRD 9 (2001); *Hose v. Chicago & Nw. Transp. Co.*, 154 FRD 222 (1994).

Dentro de su facultad discrecional, el tribunal debe realizar un balance de intereses para no perjudicar la contratación de peritos competentes y no imponer una tarifa irrazonable que obstaculice un descubrimiento viable o resulte en una ventaja indebida para el experto. *Íd.* La ponderación de cada criterio dependerá de las circunstancias del caso. *Hose v. Chicago & Nw. Transp. Co., supra.*

Aunque este Foro Apelativo no debe interferir con los asuntos discrecionales de los tribunales de instancia, procede intervenir cuando se evidencia perjuicio, parcialidad, un craso abuso de discreción, o un error en la interpretación o aplicación del derecho. *Pueblo v. Ortega Santiago*, 125 DPR 203 (1990). Existe abuso de discreción cuando el juez omite injustificadamente un hecho material importante; cuando, sin base alguna, otorga peso excesivo a un hecho irrelevante; o cuando, aun considerando los hechos pertinentes, los sopesa de manera irrazonable o ligera. *Íd.*

**III.**

En el presente caso, la parte peticionaria planteó que el TPI incidió al emitir un dictamen sobre los honorarios por la deposición de un perito sin expresarse sobre la razonabilidad de la suma

solicitada, la cual entendía que era desproporcionada, abusiva e irrazonable en Puerto Rico.

Tras una evaluación meticulosa de la normativa jurídica aplicable a este caso, concluimos que le asiste la razón a la parte peticionaria en su planteamiento. Tal como expusimos en la parte expositiva, jurisprudencialmente se han adoptado una serie de criterios para evaluar la razonabilidad de los honorarios periciales en la etapa de descubrimiento de prueba. Estos incluyen la especialidad del testigo, su formación académica y profesional, la complejidad del testimonio, las tarifas prevalecientes en la comunidad profesional, el costo de vida en el área geográfica y los honorarios facturados en casos comparables.

Pese a ello, del expediente no surge que el TPI haya realizado dicho análisis para evaluar la razonabilidad de los honorarios solicitados por el perito de la parte recurrida, el Dr. Adams, por su comparecencia virtual a una deposición. Se limitó a declarar No Ha Lugar la solicitud de regulación de los honorarios del perito por acogerse a los fundamentos esbozados por la parte recurrida. Posteriormente, el Foro *a quo* concluyó que unos honorarios de $200.00 por hora eran irrazonables, sin evaluar la razonabilidad de la suma de $5,000.00 por cuatro (4) horas solicitada por el perito. Esta falta de examen impidió una valoración judicial adecuada, máxime cuando se alegó por la otra parte que dicha suma resultaba desproporcionada e incompatible con la práctica en nuestra jurisdicción.

Dicha omisión es particularmente relevante, ya que la propia parte recurrida reconoció en su alegato ante este Tribunal que la evaluación de una compensación pericial requiere considerar los criterios antes aludidos. No obstante, el foro de instancia se limitó a acoger los argumentos de la parte recurrida sin ponderar los elementos esenciales que deben guiar esa determinación.

Por tanto, resolvemos que el TPI erró al denegar la solicitud sin aplicar los criterios jurisprudenciales pertinentes. Corresponde que ese foro realice el análisis requerido para determinar el monto razonable de la compensación que la parte peticionaria debe pagar por la deposición del perito de la parte recurrida.

En consecuencia, expedimos el auto de *certiorari* y revocamos la determinación recurrida.

**IV.**

Por los fundamentos que anteceden, se expide del auto de *certiorari* y se revoca la determinación recurrida. Se devuelve el caso al TPI para que continúe con los procedimientos, de acuerdo con lo dispuesto por este Tribunal.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones