ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| SILVERIO V. PÉREZ MARTÍNEZ<br><br>Apelante<br><br>v.<br><br>CARLOS ALEGRÍA Y OTROS<br><br>Apelados | TA2026AP00187 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm.: HU2021CV00103<br><br>Sobre: Daños y otros |
|---|---|---|

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2026.

Comparece la parte apelante, Sr. Silverio Pérez Martínez (señor Pérez Martínez, apelante). Solicita la revocación de la *Sentencia* emitida el 8 de diciembre de 2025 y notificada al día siguiente por el Tribunal de Primera Instancia, Sala Superior de Humacao (TPI).[1] En el aludido dictamen, el foro apelado declaró No Ha Lugar la demanda por incumplimiento de contrato y daños incoada por el señor Pérez Martínez en contra del Sr. Carlos Alegría y otros (señor Alegría, apelado) por la venta e instalación de un generador eléctrico en una embarcación propiedad del apelante.

Evaluado el expediente del caso ante nuestra consideración, incluyendo la transcripción de la prueba oral, así como el estado de Derecho aplicable, confirmamos la *Sentencia* apelada.

**I.**

El presente caso se inició el 2 de febrero de 2021, fecha en la que el señor Pérez Martínez instó una *Demanda* en contra del señor Alegría,

---

[1] El 10 de diciembre de 2025, notificada al día siguiente, el TPI emitió una *Sentencia Enmendada* a los únicos fines de corregir los nombres de las representaciones legales de las partes.

y otros.[2] El demandante imputó negligencia al demandado por la venta e instalación de un generador de energía en una embarcación que adquirió para su disfrute familiar. El demandante alegó que, en septiembre de 2019, pagó $20,000.00 por el equipo eléctrico y por su instalación. Señaló que en octubre de 2020 el equipo se dañó y dejó de funcionar. Atribuyó la falta de funcionamiento del equipo a una instalación incorrecta de las mangas y a la colocación de piezas al revés. Alegó que el generador perdió su garantía de fábrica. Fundamentó sus alegaciones en un Reporte de Inspección, realizado el 15 de diciembre de 2020 por American Marine Surveyor, Inc.[3] Por lo anterior, el señor Pérez Martínez suplicó la recisión del contrato, la devolución de los $20,000.00 previamente desembolsados, $25,000.00 por concepto de daños, $35,000.00 por daños ocultos, costas, gastos y honorarios de abogado.

El 27 de junio de 2021, el señor Alegría y otros presentaron su *Contestación a la demanda y reconvención.*[4] Alegó que el demandante lo contrató mediante acuerdo verbal y que se limitó a lo siguiente:

> 5. [...] (1) adquisición del generador en referencia; (2) transporte del generador en referencia y colocación en el bote con el uso de un "finger" y de una pateca; (3) preparación e instalación de base nueva para el generador en referencia; y (4) instalación de la planta en el área designada y todo lo que esto conlleva, incluyendo pero no limitándose al armado del sistema de distribución de agua salada entre el "watermaker" y el generador en referencia. También se alega afirmativamente que al día de hoy la parte demandada desconoce que tipo de "stainer" tiene el "thruhull" de toma de agua salada para el generador en referencia y el "watermaker" al esto quedar fuera del alcance de su contratación ya que todo trabajo que se ten[í]a que hacer con el bote varado o fuera del agua se hac[í]a por otro contratista y no por la parte demandada.

En su escrito, el demandado incluyó un documento que detalla la garantía de la unidad eléctrica descrita por las partes.[5] El demandado

[2] Véase, Entrada Núm. 1, del expediente digital del caso HU2021CV00103 en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).
[3] *Id.* Anejo, *Opinión Pericial.*
[4] Entrada Núm. 11, SUMAC-TPI.
[5] *Id.* La unidad es descrita como *Phasor Marine Generator.*

aceptó que se completó el trabajo de instalación y aseguró la colocación correcta de las mangas y las piezas del equipo eléctrico. Agregó que, luego de la instalación, el demandante usó y disfrutó de la embarcación. Indicó que el señor Pérez Martínez navegó hasta la República Dominicana y que luego de este viaje realizó la primera gestión de mantenimiento dentro del periodo recomendable para revisión de la unidad, entiéndase, cuando el equipo tenía aproximadamente cincuenta (50) horas de uso. El demandado indicó que no halló imperfección en el generador y tampoco ubicó rastro de agua salada en el tanque de aceite del generador eléctrico. El demandante esbozó que no fue contratado para la realización de mantenimientos posteriores a la unidad. Señaló que desconoce si el demandante se adhirió a los ciclos de inspecciones que requiere el equipo eléctrico, pues no fue contratado para trabajos posteriores. Alegó que fue luego de más de trescientas (300) horas de uso del generador de energía que el demandante se comunicó con él para notificarle la falta de funcionamiento del equipo y para solicitarle su intervención. Agregó que el informe pericial no arrojó evidencia de negligencia pues sólo detalló recomendaciones de las mejores prácticas en la industria. A su vez, imputó negligencia al demandante por no proveerle los mantenimientos requeridos al generador de energía y/o cuidar del generador eléctrico luego del mantenimiento inicial. Agregó que el señor Pérez Martínez conocía que el generador estaba operando con aceite contaminado con agua salada. También, el demandado interpuso una *Reconvención*. El señor Alegría manifestó haber cumplido con los servicios pactados. Agregó que la acción legal incoada por el señor Pérez Martínez es la causa próxima a una serie de daños a su reputación y su honra, que se traducen a pérdida de referidos y negocio, por lo que estimó sus daños en una cantidad no menor de $25,000.00.

El 4 de agosto de 2021, el señor Pérez Martínez presentó su *Moción solicitando desestimación de reconvención.*[6] Explicó que la reclamación del demandado carece de méritos y solicitó una sanción no menor de $5,000.00 por temeridad.

Luego de varios trámites procesales, el 15 de diciembre de 2022, señor Alegría se opuso a la solicitud de desestimación de la reconvención.[7] Detalló que es técnico eléctrico marino quien depende de su reputación para ganarse el sustento mediante el trabajo que realiza en embarcaciones. Puntualizó que cumplió con la labor para la cual fue contratado y que las expresiones hechas por el demandante arrojan al escarnio público al demandado y afectan su reputación laboral por lo que pudiera presentar una enmienda a su reconvención.

El 20 de enero de 2023, el demandante replicó al demandado y reiteró la falta de méritos de la reclamación del demandado.[8]

Por su parte, el 3 de febrero de 2023, el demandado presentó una dúplica.[9] Insistió en que se declarara No Ha Lugar la moción de desestimación presentada por el demandante y que se otorgara un término adicional para presentar una reconvención enmendada.

El 1 de marzo de 2023, notificada el día 6 siguiente, el TPI emitió una *Sentencia Parcial.*[10] Declaró Ha Lugar la Moción solicitando la desestimación de reconvención presentada por el demandante y desestimó, con perjuicio, la reconvención incoada por el demandado.

Luego de varias incidencias procesales, el 28 de junio de 2024, el demandado presentó su *Moción de desestimación por falta de acumular a una parte indispensable.*[11] En síntesis, solicitó que se acumulara a Bremen Auto Group Inc., como parte indispensable por constar el talonario de pago del generador a nombre de esa entidad jurídica.

---

[6] Entrada Núm. 15, SUMAC-TPI.
[7] Entrada Núm. 57, SUMAC-TPI.
[8] Entrada Núm. 62, SUMAC-TPI.
[9] Entrada Núm. 63, SUMAC-TPI.
[10] Entrada Núm. 66, SUMAC-TPI.
[11] Entrada Núm. 96, SUMAC-TPI.

El 16 de julio de 2024, el demandante se opuso a la moción incoada por el demandado.[12] En resumen, señaló que no se ha establecido un interés real e inmediato de Bremen Auto Group Inc. en el caso de autos. Por lo que dicho ente no cuenta con legitimación activa para iniciar una acción en daños en este litigio. En apoyo a su escrito, agregó una declaración jurada del presidente de la corporación.

El 18 de julio de 2024, notificada en igual fecha, el TPI declaró No Ha Lugar la *Moción de desestimación por falta de acumular a una parte indispensable* presentada por el demandado.[13]

Luego de varias incidencias procesales, el 13 de agosto de 2025, se celebró el Juicio en su fondo.[14] En lo pertinente, al procedimiento comparecieron las partes, sus respectivas representaciones legales y testigos periciales.

El 8 de diciembre de 2025, notificada al día siguiente, el TPI emitió su *Sentencia.*[15] Entre otras cosas, el Tribunal determinó que el señor Alegría había cumplido cabalmente con sus obligaciones contractuales. Además, constató que "[...]el demandante navegó por alrededor de (8) meses, viajó a República Dominicana y a las islas y regresó a Puerto Rico sin confrontar contrariedades con la planta en cuestión."[16] También, concluyó que la parte demandante no probó que la instalación del generador fuera realizada de manera negligente o que la pérdida de la garantía del generador o su eventual avería fuera causada por el demandado. Los daños y perjuicios tampoco fueron probados a satisfacción del Tribunal. Así las cosas, el TPI declaró No Ha Lugar la demanda y la desestimó con perjuicio. Adicionalmente, ordenó la entrega del generador de energía al demandante en un periodo de diez (10) días.

---

[12] Entrada Núm. 98, SUMAC-TPI.
[13] Entrada Núm. 99, SUMAC-TPI.
[14] Entrada Núm. 115, SUMAC-TPI. Surge del expediente una *Minuta enmendada* de esta vista archivada el 12 de enero de 2026 (Entrada Núm. 129, SUMAC-TPI).
[15] Entradas Núm. 116 y 119, SUMAC-TPI. A petición de la parte demandada, el 10 de diciembre de 2025, notificada al día siguiente, el TPI emitió una *Sentencia Enmendada*, (Entrada Núm. 117, SUMAC TPI. *Moción de Enmienda Nunc Pro Tunc*), a los únicos fines de corregir los nombres de las representaciones legales de las partes.
[16] *Id.*, pág. 13.

Insatisfecho con el dictamen, el 23 de diciembre de 2025, el señor Pérez Martínez incoó una *Moción solicitando determinaciones de hecho adicionales y reconsideración.*[17] En resumen, indicó que el señor Alegría no se dedicaba a la instalación de generadores eléctricos en embarcaciones y que, aun así, fue contratado para llevar a cabo el trabajo. Entre otras cosas, defendió el informe de su perito e indicó que la explicación que ofreció fue detallada y lógica sobre el fallo del generador de energía. Catalogó el informe y el testimonio del perito del demandado como uno inconcluso y contradictorio a la opinión de su perito. Reiteró que el demandado realizó una instalación deficiente al conectar una manga diseñada e instalada para surtir las plantas de purificación de agua y no para enfriar generadores auxiliares.

El 27 de enero de 2026, el señor Alegría presentó su oposición.[18] Sostuvo que las determinaciones adicionales propuestas por el demandante no encuentran amparo en el análisis realizado por el Tribunal en su *Sentencia.* En su análisis, discutió separadamente cada alegación adicional y puntualizó que las determinaciones detalladas en la Sentencia se ajustan adecuadamente a la prueba desfilada en la sala.

El 29 de enero de 2026, mediante *Resolución Interlocutoria* notificada el mismo día, el TPI declaró No Ha Lugar la a la moción presentada por el demandante.[19]

Inconforme aún, el 20 de febrero de 2026, el señor Pérez Martínez presentó ante nos su recurso de *Apelación* junto a la *Transcripción de Juicio en su fondo* (TPO) y señaló la comisión del siguiente error:

> EL TRIBUNAL DE PRIMERA INSTANCIA ERR[Ó] AL DARLE M[Á]S CREDIBILIDAD AL PERITO DE LA PARTE DEMANDADA QUE AL PERITO DE LA PARTE DEMANDANTE, QUIEN ESTABA MEJOR CALIFICADO Y OFRECI[Ó] UNA JUSTIFICACI[Ó]N L[Ó]GICA DEL PORQU[É] LA PLANTA AUXILIAR TUVIESE AGUA SALADA EN SU INTERIOR.[20]

---

[17] Entrada Núm. 122, SUMAC-TPI.
[18] Entrada Núm. 132, SUMAC-TPI.
[19] Entrada Núm. 133, SUMAC-TPI.
[20] Véase, Entrada Núm. 1, en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA). Anejo.

El 23 de febrero de 2026, notificada el mismo día, emitimos una *Resolución*. En ella, ordenamos al TPI un término de cinco (5) días para enviar la regrabación del procedimiento celebrado el 13 de agosto de 2025. También, concedimos a la parte apelada un término de diez (10) días para estipular la TPO presentada por la parte apelante y otro de treinta (30) días para presentar su alegato en oposición. Las partes fueron advertidas sobre el cumplimiento de los términos reglamentarios.

Oportunamente, el 25 de febrero de 2026, el TPI envió el enlace de la regrabación.[21]

Luego de varias incidencias procesales, y en cumplimiento de orden, el 5 de marzo de 2026, el señor Alegría estipuló la transcripción sometida por la parte apelante.[22]

El 16 de abril de 2026, el apelado solicitó tiempo adicional para presentar su escrito en oposición.[23]

El 17 de marzo de 2026, notificada el mismo día, esta Curia, mediante *Resolución*, otorgó al apelado hasta el 2 de abril de 2026 para presentar su alegato en oposición.[24]

En cumplimiento de orden, el 2 de abril de 2026, el apelado instó su oposición y, en igual fecha, sometió documentos del apéndice.[25]

Con el beneficio de ambas comparecencias, resolvemos.

## II.

### A.

La Regla 702 de Evidencia, 32 LPRA Ap. VI, R. 702, regula el testimonio pericial. Reza la norma, en su parte pertinente:

> Cuando conocimiento científico, técnico o especializado sea de ayuda para la juzgadora o el juzgador poder entender la prueba o determinar un hecho en controversia, una persona testigo capacitada como perita —conforme a la Regla 703— podrá testificar en forma de opiniones o de otra manera. [...]

---

[21] Entrada Núm. 3, SUMAC-TA.
[22] Entrada Núm. 4, SUMAC-TA.
[23] Entrada Núm. 6, SUMAC-TA.
[24] Entrada Núm. 7, SUMAC-TA.
[25] Entradas Núm. 8 y 9, SUMAC-TA.

En nuestro ordenamiento jurídico, rige una norma liberal, en cuanto a la capacidad de un testigo para declarar, pero no necesariamente para cualificarse como perito. A esos fines, la Regla 703 de Evidencia, 32 LPRA Ap. VI, R. 703, establece los criterios para la calificación de la persona perita, a saber: "su especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficiente para calificarla como experta o perita en el asunto sobre el cual habrá de prestar testimonio". A través de su educación o experiencia, el perito ha desarrollado un conocimiento o destreza sobre una materia, por lo cual puede formar una opinión que sirva de ayuda al juzgador de hechos. *SLG Font Bardón v. Mini-Warehouse*, 179 DPR 322, 338 (2010). Por tanto, una persona puede cualificarse como perito por los conocimientos especializados que posee, ya sean producto de su experiencia o de su educación. *Dye–Tex PR, Inc. v. Royal Ins. Co. PR*, 150 DPR 658, 663 (2000).

Los tribunales tienen amplia discreción al apreciar la prueba pericial. Igualmente, los foros revisores nos encontramos en la misma posición de los foros primarios en cuanto a la evaluación de determinaciones de hechos fundamentadas en la prueba pericial. En tales situaciones, podemos adoptar nuestro propio criterio en la apreciación o evaluación de la evidencia pericial o incluso descartarla, aunque resulte técnicamente correcta. *Díaz v. Pneumatics & Hydraulics*, 169 DPR 273, 297 (2006); *Dye-Tex PR, Inc. v. Royal Ins. Co., PR, supra*, págs. 662-663 y los casos allí citados.

El valor probatorio del testimonio pericial dependerá de varios factores, a saber: (1) si el testimonio está basado en hechos o información suficiente; (2) si el testimonio es producto de principios y métodos confiables; (3) si la persona aplicó los principios y métodos de manera confiable a los hechos del caso; (4) si el principio subyacente al testimonio ha sido aceptado generalmente en la comunidad científica; (5) las calificaciones o credenciales de la persona testigo, y (6) la parcialidad

de la persona testigo. Regla 702 de Evidencia, *supra.* Estos criterios no constituyen una lista taxativa, toda vez que, para conferir valor probatorio al testimonio pericial, lo esencial es su confiabilidad. "Existen otros factores que muy bien pudieran afectar el valor probatorio del testimonio pericial". *Informe de las reglas de derecho probatorio*, Tribunal Supremo de Puerto Rico, Secretariado de la Conferencia Judicial y Notarial, marzo de 2007, pág. 424. En armonía, el alto foro ha enunciado que "[e]l juez tiene una amplia discreción con relación a la admisión o exclusión de la prueba pericial. Sus determinaciones deben ser sostenidas a menos que sean claramente erróneas". *SLG Font Bardón v. Mini-Warehouse, supra*, pág. 343.

Dentro del marco jurídico antes enunciado, procedamos a discutir a continuación el señalamiento de error esbozado.

### III.

En la causa presente, el señor Pérez, parte apelante en este caso, planteó que el TPI erró en su determinación al otorgar mayor credibilidad al perito de la parte apelada, el señor Alegría. Adicionalmente, el apelante arguyó que su perito estaba mejor calificado y que ofreció una justificación lógica del hallazgo de agua salada en el interior del generador eléctrico auxiliar instalado en su embarcación por el señor Alegría.

Conforme al estado de derecho vigente, esta Curia se encuentra en la misma posición que el foro primario para evaluar la prueba pericial presentada en este caso. Ante esa premisa, procedemos a dilucidar la controversia ante nos.

En el caso de autos, y según los testimonios vertidos en el foro primario, el señor Alegría vendió e instaló un generador eléctrico al señor Pérez.[26] El apelado había realizado instalaciones previas de equipos en

---

[26] Prueba Oral (TPO), pág. 14, líneas 3-7; pág. 47, líneas 7-13; pág. 50; líneas 8-12; pág. 197, líneas 19-21. En la instalación de este equipo, también participó su yerno, el Sr. Kelvin Perche. También, véase, Entrada Núm. 108, SUMAC-TPI, Exhibit 1 ESTIPULADO FACTURAS.

la misma embarcación propiedad del apelante. Específicamente, instaló un equipo de música y un radar.[27] No surge del expediente queja alguna sobre la instalación de estos equipos y las partes se conocen desde el año 2000.[28]

Posterior a dichas instalaciones, el señor Pérez quiso agregar de manera auxiliar un generador eléctrico a su embarcación para lograr mayor seguridad y redundancia en la generación de energía durante sus periodos de navegación.[29] El señor Alegría, quien ejerce como técnico electro-marino por cuenta propia,[30] procedió con esta última instalación solicitada por el señor Pérez.

Para la colocación del generador eléctrico en el navío, el apelado explicó que hizo pruebas con el capitán de la embarcación del señor Pérez, el Sr. Pablo Cuadrado (señor Cuadrado).[31] En detalle, el señor Alegría indicó que colocó un sifón o tubo que impide que el agua retorne a la cámara de combustión.[32] El examen de funcionamiento de la unidad se realizó una vez culminada la instalación del equipo y previo a que el apelante zarpara en su nave hacia Santo Domingo en donde el navío permaneció por periodo de un mes.[33] El señor Cuadrado testificó ser el encargado del funcionamiento de la embarcación, responsabilidad que incluye la revisión del equipo eléctrico.[34] Sobre el generador de energía auxiliar, el capitán indicó que la unidad instalada por el señor Alegría funcionó algunos seis a ocho (6-8) meses.[35]

El relato del capitán de la embarcación y el apelado coinciden en que el primer mantenimiento realizado al generador eléctrico se llevó a cabo conforme a las guías del manufacturero, entiéndase poco después

---

[27] Prueba Oral (TPO), pág. 13, líneas 2-5.
[28] Prueba Oral (TPO), pág. 219, líneas 4-7.
[29] Prueba Oral (TPO), pág. 13, líneas 7-16.
[30] Prueba Oral (TPO), pág. 218, líneas 10-19. El apelado explicó que lleva como 30 años en Puerto Rico y que su trayectoria enmarca trabajos realizados para compañías industriales y trabajos por cuenta propia. Sobre su preparación académica, resaltó estudios realizados en Venezuela, Puerto Rico y Estados Unidos (Miami).
[31] Prueba Oral (TPO), pág. 224, líneas 16-21.
[32] Prueba Oral (TPO), pág. 224, líneas 20-24; pág. 225, líneas 1-13.
[33] *Id.*
[34] Prueba Oral (TPO), pág. 20, líneas 20-24; pág. 45, líneas 1-4.
[35] Prueba Oral (TPO), pág. 50, líneas 23-24; pág. 51, líneas 1-7.

de las 50 horas de uso.[36] Ese primer mantenimiento tampoco evidenció deficiencias que guarden relación con la instalación o con rastros de aceite en la unidad eléctrica.[37] El problema del generador auxiliar se reflejó como a las 150-200 horas de uso,[38] y luego de mantenimientos posteriores que no fueron realizados por el apelado.[39]

Sobre la falla en el equipo eléctrico por la alegada entrada de agua salada y para la cual se presentan las opiniones periciales, la opinión pericial provista por la parte apelante en voz del Sr. Joseph Barlía (señor Barlía), cuestionó la instalación del tubo o la toma de agua realizada por el apelado.[40] A petición del apelante, el perito realizó un *Inspection Report* de la embarcación el 15 de diciembre de 2020.[41] A pesar de ello, durante su examen directo, el Sr. Joseph Barlía admitió que la opinión que estaba brindando en sala sobre la falla en cuestión no se recogía en ningún documento.[42] Sobre su conocimiento del equipo eléctrico, expresó que no ha montado ni reparado generadores de electricidad, aunque cuenta con entrenamiento para ello que no supo precisar.[43] Indicó que su opinión estaba apoyada en sus años de experiencia a bordo de lanchas y en libros de los cuales no proveyó sus títulos.[44] Agregó que nunca había tenido una controversia como la de autos y que su sentido común de marino y su licencia sustentaban su opinión.[45] En su turno de contrainterrogatorio, el perito admitió que no inspeccionó la embarcación debajo del agua para llegar a sus conclusiones y que tampoco leyó el manual de instrucciones del generador eléctrico.[46] Adicionalmente,

---

[36] Prueba Oral (TPO), págs. 52-53; pág. 225, líneas 7-18. También, véase Entrada Núm. 93, SUMAC-TPI, Anejo *Manual de Operador e Instalación Phasor*, pág. 8.

[37] Prueba Oral (TPO), pág. 55, líneas 12-17; pág. 225, líneas 7-18.

[38] Prueba Oral (TPO), pág. 55, líneas 12-17.

[39] Prueba Oral (TPO), págs. 52-54.

[40] Prueba Oral (TPO), págs. 113-120.

[41] Prueba Oral (TPO), pág. 101-102, líneas 14-19. También, véase, Entradas Núm. 1 y 111, SUMAC-TPI. Anejo, *American Marine Surveyor Inc., Inspection Report; EXHIBIT 3 DTE INFORME PERICIAL*. El informe exhibe el sello de *Society of Accredited Marine Surveyors.*

[42] Prueba Oral (TPO), págs. 114-115.

[43] Prueba Oral (TPO), págs. 89-90.

[44] Prueba Oral (TPO), pág. 114, líneas 15-21.

[45] Prueba Oral (TPO), pág. 115, líneas 14-19.

[46] Prueba Oral (TPO), pág. 133, líneas 8-24; pág. 134, líneas 1-5.

mencionó que sus conclusiones sobre la falla técnica encuentran endoso en una consulta que realizó con el distribuidor local del equipo eléctrico, pero que no lo hizo constar en su informe.[47]

Por su parte, la opinión pericial esbozada por la parte apelada, el Sr. José Rodríguez (señor Rodríguez), incluyó catorce (14) años de experiencia en la instalación de motores de equipo marino, procedimiento que comparó con el de los generadores.[48] Aunque la contraparte objetó su cualificación por carecer de una acreditación como *surveyor,*[49] el Tribunal permitió el testimonio del perito en calidad de mecánico por su experiencia y su trabajo con generadores.[50]

Durante su examen directo, el señor Rodríguez indicó que no tuvo oportunidad de ver la embarcación porque cuando preguntó por ella, le informaron que no estaba en Puerto Rico.[51] En su explicación sobre la instalación y el problema técnico, el señor Rodríguez sostuvo que, si la instalación del generador hubiese estado mal hecha, se hubiese presentado la falla desde el principio o a las veinte horas o menos de su uso.[52] El perito también rindió un *Informe Técnico.*[53]

Luego de un examen de la prueba documental y los testimonios presentados, la explicación ofrecida por la parte apelada cumplió con el propósito de su función, entiéndase auxiliar al Tribunal a entender los elementos técnicos de la controversia. Como muestra de ello, el Tribunal afirmó en múltiples ocasiones haber entendido claramente la explicación del perito sobre la instalación y fallas reclamadas en esta causa de acción.[54] Estimamos que la aportación del perito de la parte apelada en

---

[47] Prueba Oral (TPO), págs. 141-143.
[48] Prueba Oral (TPO), págs. 147-149.
[49] Prueba Oral (TPO), pág. 150, líneas 12-14. También, véase, Prueba Oral (TPO), págs. 79-80. En su examen directo, el señor Barlía destacó que es miembro del *Society of Accredited Marine Surveyors*. Según describió, esta organización adiestra a sus miembros para certificar y valorar las embarcaciones de placer y remolcadores. Explicó que la acreditación está sujeta a revisión continua para su mantenimiento.
[50] Prueba Oral (TPO), pág. 151, líneas 2-11.
[51] Prueba Oral (TPO), pág. 154, líneas 12-14.
[52] Prueba Oral (TPO), pág. 160, líneas 5-18; págs. 162-164.
[53] Entrada Núm. 113, SUMAC-TPI. Anejo, *EXHIBIT 1 A-DEMANDADO INFORME.*
[54] Prueba Oral (TPO), pág. 157, líneas 8-24; pág. 161, líneas 9-24; págs. 162-164; págs.191-193.

este caso fue una confiable y completa. La controversia presentada ante nos versa sobre la credibilidad otorgada por el TPI a la opinión pericial presentada por la parte apelada. Siendo así, dicha credibilidad se sostiene coherentemente a lo largo de la determinación apelada. Al así actuar, el TPI no abusó de su discreción al emitir su decisión y al otorgar razonable credibilidad a la prueba desfilada ante su sala. Por consiguiente, el TPI no incurrió en el error señalado.

**IV.**

Por los fundamentos antes expuestos, confirmamos la Sentencia apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones